E-filing

Filed
MAY 0 9 2005
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

ADR

John E. Gartman (#152300; gartman@fr.com)
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, California 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Barry K. Shelton (#199307; shelton@fr.com)
FISH & RICHARDSON P.C.
One Congress Plaza
111 Congress Avenue, 4th Floor
Austin, Texas 78701
Telephone: (512) 391-4930
Facsimile: (512) 391-6837

Attorneys for Plaintiff
MICROSOFT CORPORATION

***(Additional List of Counsel for Plaintiffs on Page 2 of Complaint)***

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

MICROSOFT CORPORATION, a Washington Corporation,
APPLE COMPUTER, INC., a California corporation,
HEWLETT-PACKARD COMPANY, a Delaware corporation, and
NETGEAR, INC., a Delaware corporation,

Plaintiffs,

v.

COMMONWEALTH SCIENTIFIC AND INDUSTRIAL RESEARCH ORGANISATION,

Defendant.

Case No. C05 01894 BZ

**COMPLAINT FOR DECLARATORY JUDGMENT**

**DEMAND FOR JURY TRIAL**

Mark C. Scarsi (#183926 mscarsi@omm.com)
O'MELVENY & MYERS LLP
400 S Hope Street.
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

Attorneys for Plaintiff
APPLE COMPUTER, INC.

Jeffery B. Fromm (#104443 jeff.fromm@dbr.com)
DRINKER BIDDLE & REATH LLP
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103-6996
Telephone: (215) 988-2717
Facsimile: (215) 988-2757

Attorneys for Plaintiff
HEWLETT-PACKARD COMPANY

Jennifer A. Ochs (#174069; jochs@wsgr.com)
Christopher R. Parry (#209858; cparry@wsgr.com)
Ryan R. Smith (#229323; rsmith@wsgr.com)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

James A. DiBoise (#83296; jdiboise@wsgr.com)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Street
Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099

Attorneys for Plaintiff
NETGEAR, INC.

## COMPLAINT AND JURY DEMAND

Plaintiffs Microsoft Corporation ("Microsoft"), Apple Computer ("Apple"), Hewlett-Packard Company ("HP"), and NETGEAR, Inc. ("NETGEAR") for their complaint against defendant Commonwealth Scientific and Industrial Research Organisation ("CSIRO") allege:

### I. THE PARTIES

1. Microsoft is a corporation organized and existing under the laws of the state of Washington. Microsoft's principal place of business is One Microsoft Way, Redmond, Washington 98052.

2. Apple is a corporation organized and existing under the laws of the state of California. Apple's principal place of business is 1 Infinite Loop, Cupertino, California 95014.

3. HP is a corporation organized and existing under the laws of the state of Delaware. HP's principal place of business is 3000 Hanover Street, Palo Alto, California 94304.

4. NETGEAR, Inc. is a corporation organized and existing under the laws of Delaware. NETGEAR's principal place of business is 4500 Great America Parkway, Santa Clara, California 95054.

5. On information and belief, defendant CSIRO is a body corporate established pursuant to the *Commonwealth Science and Industry Research Act 1949* of the Commonwealth of Australia, and has a principal place of business at Limestone Avenue, Campbell ACT 2612, Australia.

### II. JURISDICTION AND VENUE

6. This action arises under the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202, the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and the laws of the state of California. An actual, substantial, and continuing justiciable controversy exists between Plaintiffs and CSIRO that requires a declaration of rights by this Court.

7. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, and 1338.

8. The Court has personal jurisdiction over CSIRO by virtue of CSIRO's purposeful and repeated contacts in this district, including, *inter alia*, the establishment of CSIRO's licensing

operation at the law offices of Townsend and Townsend and Crew LLP ("Townsend") in this District; the use of Townsend's office in this district by CSIRO employee and agent Denis Redfern in an attempt to license the '069 patent to Plaintiffs and to companies in this district; and CSIRO's threats to enforce U.S. Patent No. 5,487,069 ("the '069 patent") against companies with principal places of business in this district.

9. As discussed in Paragraphs 12-31, CSIRO has engaged in a campaign to license the '069 patent to a number of companies located in northern California, including HP, Apple, NETGEAR, and others. On numerous occasions, CSIRO has participated in face-to-face meetings with said companies in northern California and demanded that they take a license to the '069 patent. On information and belief, CSIRO employee Mr. Redfern personally participated in these in-person meetings in this district in January, March, April, May, June, August, October, and December 2004.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400.

## III. FACTUAL BACKGROUND

11. CSIRO filed U.S. patent application serial No. 08/157,375 ("the '375 application") with the U.S. Patent and Trademark Office ("PTO") on November 23, 1993. The '375 application named John D. O'Sullivan, Graham R. Daniels, Terence M. P. Percival, Diethelm I. Ostry, and John F. Deane as the alleged inventors. The '375 application issued as U.S. Patent No. 5,487,069 on January 23, 1996 (attached as Exhibit A).

### A. CSIRO Assures the IEEE It Will License the '069 Patent on Reasonable and Non-Discriminatory Terms

12. On or about October 20, 1998, Mr. Vic Hayes, of the Institute of Electrical and Electronics Engineers (IEEE) Project 802.11a committee, sent a letter to CSIRO requesting that CSIRO provide a letter of assurance to the IEEE in the form of either (1) a general disclaimer that CSIRO would not enforce any of its present or future patents whose use would be required to implement the draft IEEE 802.11a standard against any person or entity using the patent to comply with the standard; or (2) a statement that a license would be made available to all applicants

without compensation or under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination.

13. On or about December 4, 1998, Mr. Dennis Cooper, Chief of the Telecommunications & Industrial Physics Division of CSIRO replied by letter to Mr. Hayes' letter. Mr. Cooper stated that "[f]rom the information available to CSIRO, it would appear that the ['069] patent may be needed to implement the standards." Mr. Cooper further stated "[i]n the event the proposed standard is adopted and the standard cannot be practiced without the use of the patent referenced above, CSIRO agrees upon written request to grant a nonexclusive license under such patent on a non discriminatory basis and on reasonable terms and conditions including its then-current royalty rates."

**B. CSIRO Demands that Microsoft License the '069 Patent**

14. Nearly five years later, on or about September 29, 2003, Mr. Robert Colwell of the Palo Alto, California office of Townsend and Townsend and Crew LLP, counsel for CSIRO, sent a letter to Microsoft identifying the '069 patent and asserting that "[t]he CSIRO patents cover the standards set by the IEEE for implementation of wireless networks complying with at least IEEE standards 802.11a and 802.11g." Mr. Colwell further stated that "[t]he IEEE is aware of our patents, and we have agreed with the IEEE that we will grant licenses under the patents on a reasonable, nondiscriminatory basis." Attached to the letter were claim charts alleging that: (1) "A supplier of equipment conforming to 802.11g probably induces and/or contributes to infringement of claims 26 to 32"; (2) "A supplier of equipment conforming to 802.11g probably directly infringes claims 42 to 48"; (3) "A supplier of equipment conforming to 802.11g probably directly infringes claims 56 to 60"; (4) "A supplier of equipment conforming to 802.11g probably directly infringes, induces and/or contributes to infringement of claims 68 to 72"; and (5) "A supplier of equipment conforming to 802.11g probably induces and/or contributes to infringement of claims 10 to 26." The letter included information from Microsoft's web site on the Microsoft MN-700, MN-720, MN-730, MN-740, and MN-820 products, which CSIRO contended were "802.11g wireless networking products." Mr. Colwell asserted that this information showed "a need for a license under these patents [sic]."

15. CSIRO reiterated its licensing demands in several discussions with Microsoft throughout 2004. On or about September 20, 2004, CSIRO sent a formal offer to license the '069 patent to Microsoft, which expired on or about March 26, 2005.

**C. CSIRO Demands that Apple License the '069 Patent**

16. On or about April 11, 2003, Mr. Denis Redfern, General Manager Business Development of CSIRO, sent a letter to Apple identifying the '069 patent and asserting that "[t]he CSIRO patents cover products and methods for wireless networks which comply with at least IEEE Standards 802.11a and 802.11g." Mr. Redfern further stated that "[t]he IEEE is aware of our patents, and we have agreed with the IEEE that we will grant licenses under the patents on a reasonable, nondiscriminatory basis." Attached to the letter were claim charts alleging that: (1) "A supplier of equipment conforming to 802.11g probably induces and/or contributes to infringement of claims 26 to 32"; (2) "A supplier of equipment conforming to 802.11g probably directly infringes claims 42 to 48"; (3) "A supplier of equipment conforming to 802.11g probably directly infringes claims 56 to 60"; (4) "A supplier of equipment conforming to 802.11g probably directly infringes, induces and/or contributes to infringement of claims 68 to 72"; and (5) "A supplier of equipment conforming to 802.11g probably induces and/or contributes to infringement of claims 10 to 26." The letter included information from Apple's web site on Apple products M8799LL/A and M8881LL/A, which CSIRO contended were covered by the '069 patent.

17. On or about December 11, 2003, Frederick G. Michaud, outside counsel for CSIRO, sent another letter to Apple alleging infringement of the '069 patent. Specifically, Mr. Michaud stated CSIRO's current belief "that Apple is infringing the ['069 patent]." Mr. Michaud went on to demand that Apple take a license to the '069 patent.

18. Throughout 2004, CSIRO representatives attended a number of meetings at Apple's offices in Cupertino, California, in which they reiterated CSIRO's licensing demands. On or about August 12, 2004, CSIRO sent a formal offer to license the '069 patent to Apple, which expired on or about February 15, 2005.

### D. CSIRO Demands that HP License the '069 Patent

19. On or about April 11, 2003, Mr. Redfern of CSIRO, sent a letter to HP identifying the '069 patent and asserting that "[t]he CSIRO patents cover products and methods for wireless networks which comply with at least IEEE standards 802.11(a) and 802.11(g)." Mr. Redfern further stated that "[t]he IEEE is aware of our patents, and we have agreed with the IEEE that we will grant licenses under the patents on a reasonable nondiscriminatory basis." Attached to the letter were claim charts allegedly showing "correlation" between the '069 patent and the IEEE 802.11a and 802.11g standards. The letter asserted that the '069 patent "covers some of your firm's products, for example: [Compaq] Presario 2500 Series notebook with integrated 54G wireless."

20. On or about September 9, 2003, Mr. Colwell of the Palo Alto, California office of Townsend and Townsend and Crew LLP, counsel for CSIRO, sent a letter to HP reiterating CSIRO's demand that HP take a license to the '069 patent. In addition, Mr. Colwell stated "[a]s mentioned in CSIRO's initial letter, we have informed the IEEE that we are willing to license this patent. Our commitment to license the patent, however, only extends to those companies willing to discuss such licenses in good faith. For other companies, licenses will not necessarily be available. Therefore we think it mutually advantageous to meet with you or your representatives."

21. CSIRO reiterated its licensing demands in several in-person discussions in this district with HP between at least January and May 2004. On or about June 21, 2004, CSIRO sent a formal offer to license the '069 patent to HP, which expired on or about December 18, 2004.

### E. CSIRO Demands that NETGEAR License the '069 Patent

22. On or about April 11, 2003, Mr. Redfern of CSIRO sent a letter to NETGEAR, identifying the '069 patent and asserting, "[t]he CSIRO patents cover products and methods for wireless networks which comply with at least IEEE Standards 802.11a and 802.11g." Mr. Redfern's letter further states, "[t]he IEEE is aware of our patents, and we have agreed with the IEEE that we will grant licenses under the patents on a reasonable non-discriminatory basis." The letter identifies the particular model numbers of eight NETGEAR 802.11a and 802.11g wireless

access points and wireless network interface cards that CSIRO believes are "cover[ed]" by the '069 patent.

23. Enclosed with Mr. Redfern's letter were claim charts alleging that a supplier of equipment conforming to the IEEE 802.11a and 802.11g standards "probably directly infringes, induces and/or contributes to infringement of claims [of the '069 patent]."

24. Mr. Redfern and CSIRO's Townsend counsel subsequently met with NETGEAR in a series of face-to-face meetings in Palo Alto, California and CSIRO reiterated its assertions that it is necessary to practice at least some of the claims of the '069 patent in order to comply with the 802.11a and 802.11g standards; that these claims of the 069 patent are valid; and that therefore NETGEAR is required to take a license to the '069 patent. CSIRO told NETGEAR that CSIRO would conduct a two-phase licensing program. During Phase One, CSIRO would ask the wireless networking industry to voluntarily license the '069 patent. During Phase Two, CSIRO would obtain payment from the wireless networking industry involuntarily (*i.e.*, through litigation).

25. On August 10, 2004, CSIRO extended its formal licensing offer to NETGEAR. The terms of CSIRO's offer provided that it would expire in six months (*i.e.*, in February 2005).

26. On information and belief, during Phase One, no one in the wireless networking industry accepted CSIRO's proposed licensing terms.

27. On information and belief, in February 2005, CSIRO initiated Phase Two (the "involuntary" phase) of its licensing program against the wireless networking industry.

28. NETGEAR and CSIRO have broken-off licensing negotiations. There are no current efforts to negotiate a license outside of litigation.

29. CSIRO's "Strategic Plan for 2003-2007," which is publicly available on CSIRO's website at http://www.csiro.au/proprietaryDocuments/stratplan03.pdf, states on page 84 that CSIRO intends "aggressively to pursue possible infringement or assertion actions" to enforce its patents, and this includes CSIRO's "wireless local area networking IP." The report further notes that: "[CSIRO] will become increasingly proactive and systematic in managing this significant portfolio for growth and value realisation. It is critical to start these activities now...." *See id.*

30. Accordingly, Plaintiffs have a reasonable apprehension of being sued by CSIRO for infringement of the '069 patent.

31. On information and belief, CSIRO's license offers to Plaintiffs and other companies have not been on reasonable and non-discriminatory terms.

**FIRST COUNT**

**DECLARATORY JUDGMENT – NONINFRINGEMENT OF THE '069 PATENT**

32. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 31, inclusive.

33. This is an action for declaratory judgment of noninfringement of any and all valid claims of the '069 patent.

34. Plaintiffs have an objectively reasonable apprehension that CSIRO will bring a patent infringement action against Plaintiffs and/or Plaintiffs' customers.

35. CSIRO has alleged that it "holds all rights and interest in the '069 patent."

36. CSIRO has alleged and continues to allege that Plaintiffs have directly infringed, and induced and/or contributed to the infringement of the '069 patent.

37. Plaintiffs deny CSIRO's allegations with respect to infringement by Plaintiffs or Plaintiffs' customers. Neither Plaintiffs nor their customers directly infringe, either literally or under the doctrine of equivalents, or induce or contribute to the infringement of, any valid claim of the '069 patent.

38. Accordingly, there exists an actual, justiciable controversy between Plaintiffs and CSIRO relating to whether the claims of the '069 are infringed by Plaintiffs or Plaintiffs' customers.

39. Plaintiffs desire and request a judicial determination and declaration of the respective rights and duties of the parties based on the disputes recited in this complaint.

**SECOND COUNT**

**DECLARATORY JUDGMENT – INVALIDITY OF THE '069 PATENT**

40. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 39, inclusive.

41. This is an action for declaratory judgment of invalidity of any and all claims of the '069 patent.

42. Plaintiffs have an objectively reasonable apprehension that CSIRO will bring a patent infringement action against Plaintiffs and/or Plaintiffs' customers.

43. The claims of the '069 patent are invalid because they fail to comply with the conditions and requirements for patentability set forth in 35 U.S.C. § 1 *et seq.*, including but not limited to 35 U.S.C. §§ 101, 102, 103, 112, 115, 116, 118, 132, and 256.

44. Accordingly, there exists an actual justiciable controversy between Plaintiffs and CSIRO relating to whether the claims of the '069 are invalid.

45. Plaintiffs desire and request a judicial determination and declaration of the respective rights and duties of the parties based on the disputes recited in this complaint.

**THIRD COUNT**

**DECLARATORY JUDGMENT – EQUITABLE ESTOPPEL**

46. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 45, inclusive.

47. CSIRO's enforcement of the '069 patent is barred in its entirety by the doctrine of equitable estoppel. This estoppel is created by, but not limited to, CSIRO's failure to fulfill its assurance to the IEEE that it would license the '069 patent on reasonable and non-discriminatory terms.

48. On information and belief, the terms of CSIRO's offers to license the '069 patent to Plaintiffs and other companies have not been, and are not presently, reasonable.

49. On information and belief, CSIRO has also not offered licenses to the '069 patent in a demonstrably fair and non-discriminatory manner. For example, CSIRO has refused to offer licenses to one or more suppliers of integrated circuits that provide IEEE 802.11a and/or 802.11g functionality, in contravention of its assurance to the IEEE that it would license the '069 patent on reasonable and non-discriminatory terms.

50. Based in part on CSIRO's unequivocal assurance to the IEEE that it would license the '069 patent on reasonable and non-discriminatory terms, CSIRO deceived the IEEE, Plaintiffs, Plaintiffs' customers, and other members of the 802.11a/g wireless LAN industry.

51. On information and belief, if CSIRO had informed the IEEE P802.11a committee that it would not license the '069 patent on reasonable and non-discriminatory terms, the P802.11a committee would have adopted any one of a number of readily available and technically suitable alternatives.

52. Plaintiffs and their customers have been and continue to be prejudiced by CSIRO's failure to honor the promise it made to the IEEE, which led to the promulgation of the 802.11a and 802.11g standards. The substantial investment made by Plaintiffs and their customers in research and development, design, manufacture, sales and marketing of Plaintiffs' products is threatened by CSIRO's deceit.

53. CSIRO is barred from enforcing the '069 patent against Plaintiffs or their customers as a result of CSIRO's misleading representation to the IEEE and the other unlawful conduct alleged in this complaint.

54. Accordingly, there exists an actual, justiciable controversy between Plaintiffs and CSIRO concerning whether the claims of the '069 patent are unenforceable due to equitable estoppel.

55. Plaintiffs desire and request a judicial determination and declaration of the respective rights and duties of the parties based on the disputes recited in this complaint.

**FOURTH COUNT**

**DECLARATORY JUDGMENT – PATENT MISUSE**

56. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 55, inclusive.

57. The '069 patent is unenforceable for patent misuse, due to CSIRO's continuing unlawful attempts to enforce the '069 patent as alleged in this complaint.

58. On information and belief, despite CSIRO's knowledge and awareness that the '069 patent is invalid and unenforceable, as alleged herein, CSIRO has attempted and continues to

attempt to improperly obtain the economic advantage of injunctive relief and/or monetary damages against Plaintiffs and their customers.

59. Accordingly, there exists an actual, justiciable controversy between Plaintiffs and CSIRO concerning whether the claims of the '069 patent are unenforceable due to patent misuse.

60. Plaintiffs desire and request a judicial determination and declaration of the respective rights and duties of the parties based on the disputes recited in this complaint.

**FIFTH COUNT**

**DECLARATORY JUDGMENT – ESTOPPEL**

61. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 60, inclusive.

62. CSIRO is estopped from alleging that wireless LAN components that are compliant or compatible with the IEEE 802.11a/g standards infringe any claims of the '069 patent, due to statements made and actions taken before the PTO by the '069 patent applicants and their attorneys in order to obtain issuance of the '069 patent.

63. Accordingly, there exists an actual, justiciable controversy between Plaintiffs and CSIRO concerning whether CSIRO is estopped from asserting that wireless LAN components that are compliant or compatible with the IEEE 802.11a/g standards infringe any claims of the '069 patent.

64. Plaintiffs desire and request a judicial determination and declaration of the respective rights and duties of the parties based on the disputes recited in this complaint.

**SIXTH COUNT**

**DECLARATORY JUDGMENT – LACHES**

65. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 64, inclusive.

66. CSIRO's enforcement of the '069 patent is barred in its entirety by the equitable doctrine of laches.

67. On information and belief, CSIRO has long known of the Plaintiffs' adoption of the IEEE 802.11a/g standards and their implementation of products that are compliant or compatible with such standards.

68. The Plaintiffs' use of the IEEE 802.11a/g standards have been pervasive, open and notorious, including but not limited to the use of such standards in multiple products that are widely available, as well as advertising and media coverage of products that are compliant or compatible with these standards.

69. On information and belief, CSIRO's delay in attempting to license the '069 patent to Plaintiffs and other companies is unreasonable and inexcusable.

70. On information and belief, as a result of CSIRO's unreasonable and inexcusable delay in attempting to license the '069 patent to Plaintiffs and other companies, Plaintiffs have been materially prejudiced both from the changes in economic position and from the loss of evidence. The prejudice includes, but is not limited to, Plaintiffs' adoption of the IEEE 802.11a/g standards in their products and their investment of substantial resources unrelated to the alleged infringement that could have been avoided had CSIRO attempted to license the '069 patent in a timely fashion. Furthermore, because of CSIRO's delay, Plaintiffs have lost both documentary and witness evidence relevant to their defense of CSIRO's infringement claims.

71. Because of CSIRO's unreasonable and inexcusable delay in attempting to license the '069 patent, the prejudice resulting to Plaintiffs from that delay, and the Plaintiffs' good faith belief that the '069 patent is not infringed by use of the IEEE 802.11a/g standards, equity requires that CSIRO be barred from enforcing the '069 patent.

72. Accordingly, there exists an actual, justiciable controversy between Plaintiffs and CSIRO concerning whether the claims of the '069 patent are unenforceable due to laches.

73. Plaintiffs desire and request a judicial determination and declaration of the respective rights and duties of the parties based on the disputes recited in this complaint.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

A. A judgment declaring that each of the Plaintiffs have not infringed and do not infringe in any manner any valid claim of the '069 patent;

B. A judgment declaring that each claim of the '069 patent is invalid;

C. A judgment declaring that the '069 patent is unenforceable and therefore without any force or effect against Plaintiffs, their respective officers, agents, servants, employees, customers, and attorneys;

D. A judgment that CSIRO is barred from enforcing the '069 patent based on the equitable doctrine of estoppel;

E. A judgment that CSIRO is barred from enforcing the '069 patent based on its misuse of the '069 patent;

F. A judgment that CSIRO is barred from enforcing the '069 patent based on the equitable doctrine of laches;

G. A judgment that CSIRO is estopped from asserting that IEEE 802.11a/g wireless LAN components infringe any claim of the '069 patent;

H. A judgment deeming this to be an "exceptional" case with the meaning of 35 U.S.C. § 285, entitling Plaintiffs to an award of their reasonable attorneys' fees, expenses, and costs in this action; and

I. For such other and further relief, in law or in equity, as this Court deems just.

**JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury as to all issues and causes of action so triable herein, pursuant to Federal Rule of Civil Procedure 38.

**CERTIFICATION OF INTERESTED PARTIES PURSUANT TO CIVIL L.R. 3-16**

Pursuant to Civil L.R. 3-16, the undersigned certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the

proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

Accton Technology Corporation

Agere Systems Inc.

Arima Computer Corporation

Askey Computer Corporation

ASUSTek Computer, Inc.

Atheros Communications, Inc.

Broadcom Corporation

Cameo Communications, Inc.

Compal Electronics Inc.

Conexant Systems, Inc.

Delta Networks, Inc.

D-Link Systems, Inc.

Foxconn Electronics Inc.

Hon Hai Precision Industry Co., Ltd. (aka Foxconn or Ambit)

Intel Corporation

Inventec Corporation

LG Electronics Inc.

Marvell Asia Pte. Ltd.

Proxim Corporation

Quanta Computer, Inc.

Realtek Semiconductor Corp.

SerComm Corporation

Wistron Corporation

Z-Com, Inc.

Dated: May 5, 2005

FISH & RICHARDSON P.C.

By: John E. Gartman
John E. Gartman

Attorneys for Plaintiff
MICROSOFT CORPORATION

O'MELVENY & MYERS LLP

By: Mark C. Scarsi
Mark C. Scarsi

Attorneys for Plaintiff
APPLE COMPUTER, INC.

DRINKER BIDDLE & REATH LLP

By: Jeffery B. Fromm
Jeffery B. Fromm

Attorneys for Plaintiff
HEWLETT-PACKARD COMPANY

WILSON SONSINI GOODRICH & ROSATI

By: Jennifer A. Ochs
Jennifer A. Ochs

Attorneys for Plaintiff
NETGEAR, INC.