IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Microsoft Corporation, a Washington corporation, Apple Computer, Inc., a California corporation, Hewlett-Packard Company, a Delaware corporation, and Netgear, Inc., a Delaware corporation, | ) ) ) ) ) ) | |
| Plaintiffs and Counter-Defendants, | ) ) ) | |
| v. | ) ) | Civil Action No. 6:06-CV-549 (LED) |
| Commonwealth Scientific and Industrial Research Organisation, | ) ) ) | |
| Defendant and Counter-Claimant. | ) | |

## MARVELL SEMICONDUCTOR, INC., MARVELL ASIA PTE., LTD., AND MARVELL INTL., LTD.'S MOTION TO STAY PROCEEDINGS AND, IN THE ALTERNATIVE, TO DISQUALIFY DEFENDANT'S COUNSEL

## I.      INTRODUCTION

Marvell Semiconductor, Inc., Marvell Asia Pte., Ltd., and Marvell Intl., Ltd. (collectively "Marvell") hereby respectfully move this Court to stay certain claims of Defendant and Counter-Claimant Commonwealth Scientific and Industrial Research Organisation ("CSIRO") against Plaintiffs/Counter-Defendants in the above-captioned case, pending a final resolution of a related action filed by Marvell also in the United States District Court for the Eastern District of Texas, Marvell Semiconductor, Inc. v. Commonwealth Scientific and Industrial Research Organisation, No. 6:07-CV-204 (LED) (the "Marvell Action").  Specifically, Marvell respectfully seeks to stay the portions of CSIRO's patent infringement claims directed to all Counter-Defendant devices incorporating Marvell 802.11a/g/n wireless local area network ("WLAN") products (the "Accused Devices Employing Marvell WLAN Parts").  These infringement claims should be decided between Marvell (the manufacturer of the accused parts at the heart of the claims) and

CSIRO in the Marvell Action; this would be the fair, judicially efficient and proper resolution of these interrelated series of actions.  Marvell also moves, in the alternative if the claims are not stayed, to disqualify CSIRO's counsel, Townsend & Townsend & Crew, LLP ("Townsend"), from further representation of CSIRO in the above-captioned case as to the portions of CSIRO's claims directed to the Accused Devices Employing Marvell WLAN Parts.  Of the Defendants, only Hewlett-Packard has indicated opposition to any part of the motion.[1]

Currently pending before this Court are two separate actions, the Marvell Action and the instant action, which concern significantly similar facts and issues.[2]  Both actions implicate issues of infringement and validity of U.S. Patent No. 5,487,069 ("the '069 Patent") vis-à-vis Marvell's 802.11a/g/n WLAN parts.  Pursuant to the customer suit doctrine, which mandates that a suit by the manufacturer of the accused products takes precedence over a suit by the patentee against the manufacturer's customers, CSIRO's claims against the Accused Devices Employing Marvell WLAN Parts made, used or sold by the Counter-Defendants (collectively the "Marvell Customer Defendants")[3] in the instant action should be stayed pending resolution of the Marvell Action.[4]

--------

[1] Plaintiffs/Counter-Defendants Microsoft and Netgear have indicated that they would not oppose the motion whereas Hewlett-Packard opposes the request for partial stay but takes no position on the request for disqualification.

[2] There are three other actions involving CSIRO before this Court, styled as Commonwealth Scientific and Industrial Research Organisation v. Toshiba America Information Systems, Inc., No. 6:06-CV-550 (LED) (the "550 Action"); Intel Corp. v. Commonwealth Scientific and Industrial Research Organisation, No. 6:06-CV-551 (LED) (the "551 Action"); and Commonwealth Scientific and Industrial Research Organisation v. Buffalo Technology (USA), Inc., No. 6:06-CV-324 (LED) (the "324 Action").  The 550 Action also implicates issues of infringement and validity of CSIRO's patent vis-à-vis Marvell's 802.11a/g/n WLAN products sold by at least one of the defendants.  A similar motion to intervene and stay has been filed concurrently in the 550 Action.  It is Marvell's understanding that neither the 551 Action nor the 324 Action implicate claims against Marvell's 801.11a/g/n WLAN products.

[3] The identities of the Marvell Customer Defendants are disclosed in the Second Declaration of Eric B. Janofsky, filed under seal herewith, ¶ 2.

[4] Marvell does not seek a stay of any defendant products other than the Accused Devices Employing Marvell

The requested stay would promote efficient and orderly adjudication of CSIRO's claims as to the Accused Devices Employing Marvell WLAN Parts and would be the least burdensome manner of proceeding for all parties.  Marvell, the manufacturer of the parts that are at the heart of CSIRO's infringement claims, would be justly allowed to defend its parts against CSIRO's infringement claims.  CSIRO would retain its choice of venue to assert its claims against these parts, and would benefit from the ability to litigate its claims against a single defendant and from the more efficient and direct access to key discoverable information from Marvell.[5]  Further, the stay would avoid the undue hardship upon each of the Marvell Customer Defendants from having to defend claims against products about which they are not familiar.  Finally, a stay is the most efficient manner of proceeding because this Court would not need to decide Marvell's claim for disqualification of Townsend from further representation as to such claims by CSIRO. As explained below, Marvell seeks, as an alternative remedy, to disqualify Townsend from representation of CSIRO as to those claims arising from the Accused Devices Employing Marvell WLAN Parts in the event that a stay is not granted by the Court.  A stay of those claims would resolve Marvell's disqualification motion because Townsend would no longer continue its tainted representation of CSIRO as to those claims.  Instead, the stayed claims would be addressed in the Marvell Action, in which CSIRO is represented by counsel other than Townsend.[6]

If the Court declines to grant the partial stay requested by Marvell, Marvell is entitled to

---

WLAN Parts.

[5] At the scheduling conference on May 2, 2007, the Court and the parties discussed the lack of "direct access" to information requested by CSIRO and in the possession of the suppliers of the accused chipsets, such as Marvell. See Scheduling Conference Tr., 36:4 - 38:3, May 2, 2007.

[6] Townsend has confirmed that it is not representing CSIRO in the Marvell Action.  Declaration of Warren S. Heit filed herewith ("Heit Decl.") ¶ 2.

an order for disqualification of Townsend from the present case as to the claims concerning the Accused Devices Employing Marvell WLAN Parts.  Since at least 2000, Townsend has represented Marvell's legal interests in hundreds of matters.  Declaration of Eric B. Janofsky filed herewith ("Janofsky Decl.") ¶ 7.  Notwithstanding Townsend's violation of its ethical duties and its attempts to jettison Marvell in favor of a more lucrative representation, Townsend continues to represent Marvell in at least one matter.  Id. ¶ 27.  As a current client of Townsend, Marvell is entitled to the requested disqualification because Townsend's representation of CSIRO, particularly with respect to CSIRO's claim for a permanent injunction against products incorporating parts that are designed and sold by Marvell, is directly adverse to Marvell's interests.  In the alternative, Marvell is entitled to the requested disqualification as a former client of Townsend because (1) there is a substantial relationship between Townsend's former representation of Marvell and Townsend's current representation of CSIRO, and (2) there is a reasonable probability that Townsend will use or disclose, to Marvell's disadvantage, confidential, relevant information concerning Marvell and Marvell products in the present action.

## II.      FACTUAL BACKGROUND

### A.      Marvell Manufactures the Devices That Are At The Heart of CSIRO's Infringement Claims.

The main focus of CSIRO's '069 patent is allegedly directed to a particular design of a mobile transceiver.  (Generally speaking, a "transceiver" is radio equipment designed to both transmit and receive signals.)   For example, the vast majority of the claims of the '069 patent recite the elements of a particular mobile transceiver.  The front cover of the patent includes a block diagram of a portion of a particular mobile transceiver.  The written specification is in large part dedicated to the description of the design of the particular mobile transceiver.

Although the '069 patent is allegedly directed to a specific type of mobile transceiver and

infringement will be decided on whether the mobile transceivers employed by the named defendants are covered by the claims of the '069 patent, not a single one of the four Counter-Defendants named in this action manufactures a transceiver.  In the instant litigation, CSIRO has chosen to assert counterclaims against none of the manufacturers of the mobile transceivers that are at issue but rather their customers.  This is consistent with the strategy employed by CSIRO in the Buffalo litigation (Commonwealth Scientific and Industrial Research Organisation v. Buffalo Technology (USA), Inc., No. 6:06-CV-324 (LED)), in which CSIRO chose to sue Buffalo instead of the manufacturer(s) of the transceiver at issue.

Marvell manufactures and sells, inter alia, mobile transceivers, sometimes referred to as 802.11a/g/n WLAN parts.  It is these Marvell 802.11a/g/n WLAN mobile transceivers that are at the heart of CSIRO's infringement claims against the Marvell Customer Defendants and thus are at risk of being enjoined by the permanent injunction that CSIRO seeks in this litigation.  To prove infringement with respect to the Accused Devices Employing Marvell WLAN Parts, CSIRO will be required to demonstrate that Marvell's 802.11a/g/n WLAN mobile transceivers meet each and every element of one or more claims of the '069 patent.  Marvell, as the manufacturer of the WLAN parts, is in a far better position than the Marvell Customer Defendants to defend against CSIRO's assertions that the Accused Devices Employing Marvell WLAN Parts infringe the '069 patent and has the preferential right to do so under the customer suit doctrine (see discussion at Section III(A) below).

**B.     The Marvell Customer Defendants Do Not Know The Internal Details of Marvell's Parts.**

The Marvell Customer Defendants stand accused of patent infringement because each has purchased Marvell parts and incorporated them in unaltered form into their products.  The Marvell Customer Defendants are not familiar with the inner workings of Marvell's parts.  In

fact, unless they have reverse engineered Marvell's parts (which they are contractually

prohibited from doing with respect to the underlying firmware and software in non-source code

form), none of the Marvell Customer Defendants know the internal details of how Marvell's

components operate.  Their engineers were not involved in the design of Marvell's parts.  They

do not have the internal layouts or schematics for Marvell's parts.

Indeed, CSIRO has taken the position that it requires the confidential information of the

chip manufacturers to move forward with its case against the Marvell Customer Defendants.[7]

Counsel for a number of the Counter-Defendants in the instant action have contacted Marvell

and asked Marvell for its assistance in producing documents.  See Letter from Richard C.

Vasquez to Saxon S. Noh, dated May 18, 2007, attached (excluding attachments) hereto as

Exhibit A; E-mail Message from Rick L. Rambo to Warren S. Heit, dated June 29, 2007,

attached (excluding attachments) hereto as Exhibit E.  Notwithstanding their lack of knowledge

of Marvell's parts, the Marvell Customer Defendants are now required to defend against

allegations of patent infringement with respect to the Accused Devices Employing Marvell

WLAN Parts.

### C.      CSIRO's Counsel, Townsend, Also Represents Marvell

Beginning at some point in or before 2000 and continuing to the present, Marvell has

retained Townsend to represent Marvell's interests in various intellectual property matters.  In

particular, Townsend has a substantial history of working for Marvell in the areas of WLAN

IEEE (Institute of Electrical and Electronics Engineers, Inc.) Standard 802.11 technology, the

technology at issue in the instant litigation.  As a result, Townsend has been made privy to and

---

[7] CSIRO has requested information about the accused products, such as "the RTL code which defines the operation of the chip," which are not in the possession of the defendants and which the Court has ordered the defendants to request from the suppliers/manufacturers of the accused chips and chipsets.  See supra note 5.

has obtained highly proprietary, confidential, and privileged information about Marvell's technology and Marvell's litigation and decision making processes, which would be very useful in the prosecution of any matter concerning Marvell's products and/or intellectual property. Janofsky Decl. ¶¶ 8, 28-38. (The extent of Townsend's access to Marvell confidential information is further described in Section III(B)(3) infra.)

During the course of various license negotiations between Marvell and CSIRO in March 2007, Marvell informed Townsend of Marvell's belief that Townsend's representation of CSIRO in actions involving Marvell's products and/or intellectual property is adverse to the interests of Marvell, and that Marvell would not be willing to waive Townsend's conflicts of interest arising from its representation of CSIRO in the instant action. Although Townsend argued that its representation of CSIRO does not create a conflict of interest, Marvell expressed its contention that Townsend had breached its duty of loyalty to Marvell. Accordingly, Marvell demanded that Townsend withdraw from its representation of CSIRO in all actions against Marvell's customers. Id. ¶¶ 14-17, 22.

On March 21, 2007, Marvell filed suit against Townsend in the Superior Court of California, County of San Francisco, for breach of fiduciary duty and professional malpractice, seeking a preliminary and permanent injunction enjoining Townsend from continuing to represent CSIRO in the instant action. On April 20, 2007, Marvell filed its First Amended Complaint. A copy of the First Amended Complaint (excluding exhibits) in the California action, Marvell Semiconductor, Inc. v. Townsend and Townsend and Crew LLP, No. CGC-07-461589 (the "Townsend Action"), is attached hereto as Exhibit B. On June 13, the Superior Court denied Marvell's motion for preliminary injunction on the sole ground that the motion should be heard in this Court. Although the Superior Court has not yet entered an order, a copy

of the docket sheet displaying the text of the court's ruling is attached hereto as Exhibit C.

Notably, the order did not address the merits of Marvell's motion.  In accordance with the

Superior Court's order, Marvell brings the current motion to seek a stay of CSIRO's claims

directed to the Accused Devices Employing Marvell WLAN Parts and, in the alternative,

disqualification of Townsend from further representation of CSIRO as to those claims in the

event that a stay of those claims is not granted.  As noted above, a stay of those portions of

CSIRO's claims against the Marvell Customer Defendants would obviate Marvell's concerns

about Townsend's representation of CSIRO in this action because the claims involved in the

tainted representation would be stayed in favor of the Marvell Action, where CSIRO is

represented by counsel other than Townsend.[8]

### D.   Marvell Filed Suit Against CSIRO For Declaratory Relief With Respect to the Marvell Products.

On May 4, 2007, Marvell filed the Marvell Action against CSIRO, seeking a declaratory

judgment that the '069 patent is invalid and/or unenforceable and is not infringed by Marvell

and/or by any of Marvell's customers.  These are the same issues raised in answers filed by the

Marvell Customer Defendants.  In the Marvell Action, Marvell also seeks a court order requiring

CSIRO to grant a '069 patent license to Marvell on reasonable and non-discriminatory terms in

accordance with the terms of CSIRO's IEEE assurance, to which Marvell is a third party

beneficiary.  On June 6, 2007, CSIRO accepted service of the complaint.  Pursuant to the parties'

stipulation, CSIRO has sixty (60) days from June 4, 2007 to respond to the complaint.  A copy of

the complaint (excluding exhibits) is attached hereto as Exhibit D.

## III.   ARGUMENT

---

[8] See supra note 6.

A.     **CSIRO's Claims Against the Marvell Customer Defendants Directed to the Accused Devices Employing Marvell WLAN Parts Should Be Stayed.**

The U.S. Supreme Court has held that every court has the power to control its docket by staying proceedings in the interests of efficiency and judicial economy.  Landis v. N. Am. Co., 229 U.S. 248, 254 (1936).  In deciding whether to grant a motion to stay, the court should consider the following factors:  (1) the hardships and inequities that would be sustained by the movant if the stay is denied, (2) the potential prejudice to the non-movant as a result of the stay, and (3) conservation of judicial resources resulting from the stay.  U.S. Bank, Nat'l Ass'n v. Royal Indem. Co., No. CIV.A.3:02-CV-0853-P, 2002 WL 31114069, at *2 (N.D. Tex. Sept. 23, 2002).  As explained below, these factors weigh heavily in favor of granting a partial stay of CSIRO's claims against the Accused Devices Employing Marvell WLAN Parts in the present action during the pendency of Marvell's suit against CSIRO.

1.     **Pursuant to the Customer Suit Doctrine, the Marvell Action Takes Precedence Over the Instant Litigation Against the Marvell Customer Defendants.**

As the manufacturer of the products central to the dispute between CSIRO and the Marvell Customer Defendants, Marvell, and not the Marvell Customer Defendants, is in the best position to litigate infringement claims arising from such products.  It is widely recognized that a suit by the manufacturer of the accused products takes precedence over a suit by the patentee against the manufacturer's customers.  Katz v. Lear Siegler, Inc., 909 F.2d 1459, 1464 (Fed. Cir. 1990); see also Kahn v. Gen. Motors Corp., 889 F.2d 1078, 1081 (Fed. Cir. 1989).  In Katz, the Federal Circuit applied the customer suit doctrine, referred to by the court as the "customer suit exception" to the first-to-file rule, to affirm an order enjoining the patentee from continuing litigation against a customer defendant pending resolution of the litigation against the manufacturer of the accused products.  Katz, 909 F.2d at 1464.  The court noted that "[a]t the

root of the preference for a manufacturer's declaratory judgment action is the recognition that, in reality, the manufacturer is the true defendant in the customer suit . . . it is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products." Id. (citing Codex Corp. v. Milgo Elecs. Corp., 553 F.2d 735 (1st Cir. 1977)). Although the patentee argued that the customer suit doctrine was inapplicable because the customer defendants had not agreed to be bound by the results of the manufacturer suit, the court found that resolution of the manufacturer suit would resolve the major issues in the customer suit, such as the infringement and validity of the patents underlying both suits. Id. The court further acknowledged that additional issues in the customer suit could remain unresolved, but concluded that the patentee's prosecution of such issues would be either advanced or mooted by the outcome of the manufacturer suit. Id. Thus, the court affirmed the stay of the customer suit in favor of the manufacturer's declaratory judgment suit. This is precisely the situation at issue in the instant action.

 This Court (Judge Leonard Davis) has also applied the customer suit doctrine to find that a patentee's separate action against a secondary party should yield to a suit involving the designer of the accused products. See Ciena Corp. v. Nortel Networks Inc., No. 2:05-CV-14, 2005 WL 1189881, at *9 (E.D. Tex. May 19, 2005). The Court described the doctrine as based on the belief that "infringement determinations should be made in suits involving the true defendant in the plaintiff's suit, i.e., the party that controls the product's design, rather than in suits involving secondary parties, i.e. customers." Id. In reaching its decision that the designer of the accused product was the true defendant in the patentee's suit, the Court noted that the designer was under pressure to protect its accused product and that the designer may owe a

contractual obligation to defend the secondary party.  Id.  As in Katz, the patentee in Ciena argued that the customer suit doctrine did not apply due to the lack of agreement by the secondary party to be bound by the results of the primary suit, but the Court was not swayed by such arguments and described them as "more academic than realistic."  Id. at *10.

Under similar reasoning, although the Marvell Action was filed after CSIRO's counterclaims against the Marvell Customer Defendants, the counterclaims relating to the Marvell Customer Defendants' purchase and use of Marvell's parts should yield to the Marvell Action.  Like the designer in Ciena, Marvell, as the manufacturer of the 802.11a/g/n WLAN mobile transceivers that are at the heart of the allegations against the Accused Devices Employing Marvell WLAN Parts, is the true defendant against such claims, has the strongest interest at stake and has the greatest knowledge of the technology at issue.  Indeed, CSIRO is seeking a permanent injunction in the instant action that would enjoin Marvell's parts.  Thus, not only do the "simple facts of life" dictate that Marvell defend its products, Marvell must be allowed to defend its products against CSIRO's allegations; otherwise Marvell will face significant risks without due process because of the threatened permanent injunction.  Further, Marvell has acknowledged a demand for indemnification from one of the Marvell Customer Defendants arising from a written indemnification agreement between Marvell and that customer.  Janofsky Decl. ¶ 13.  Such indemnification demand further clarifies Marvell's status as the true defendant against CSIRO's claims; as a result of the indemnification agreement, Marvell may ultimately bear the financial brunt of the current litigation, at least with respect to the customer seeking indemnification.  In contrast, the Marvell Customer Defendants have less incentive and no knowledge, layouts, or schematics of the internal workings of Marvell's parts.  CSIRO's litigation strategy is precisely the type of procedural gamesmanship that the customer

suit doctrine is designed to prevent.

Moreover, resolution of the Marvell Action would resolve CSIRO's claims against the Accused Devices Employing Marvell WLAN Parts.  It is a well-settled rule that where a manufacturer has proven non-infringement or invalidity of a patent as to its products, the patentee cannot pursue an infringement action against purchasers of such products.  See Kessler v. Eldred, 206 U.S. 285, 288-89 (1907); MGA, Inc. v. Gen. Motors Corp., 827 F.2d 729, 734 (Fed. Cir. 1987).

## 2.   A Partial Stay Will Allow the Defendants to Avoid Unnecessary Hardship.

A stay will allow the moving party to avoid undue hardship if in the absence of the stay, there is the potential that the movant would be forced to waste its time, energy, and money on repetitive and overlapping litigation.  U.S. Bank, 2002 WL 31114069, at *2.  Here, although the movant is Marvell rather than the Marvell Customer Defendants, the policy underpinning the U.S. Bank rule still applies.  There is no need for the Marvell Customer Defendants to incur the costs and burdens of litigating the same facts and issues regarding the infringement, validity, and enforceability of the '069 that will be fully addressed and litigated by Marvell in the Marvell Action.  Certainly, it would be unfair to force the Marvell Customer Defendants to litigate issues regarding products which they did not manufacture or design, and for which they do not have layouts or schematics.  A partial stay of the claims involving the Marvell products will relieve the Marvell Customer Defendants of such unwarranted costs and burdens.

The requested stay would allow Marvell, the movant, to avoid unnecessary hardships as well.  If the stay is not granted, in addition to litigating its own claims against CSIRO, Marvell would also be required to assist each of the Marvell Customer Defendants in their defense against CSIRO's claims directed to the Accused Devices Employing Marvell WLAN Parts.

CSIRO has already requested, and this Court has already ordered, that the Marvell Customer

Defendants request information about the Marvell parts at issue from Marvell itself.  See

Scheduling Conference Tr., 36:4 - 38:3, May 2, 2007.  As noted above, Marvell has already

received requests to assist some of the Marvell Customer Defendants in the present action.  See

Exs. A and E.  Further, if the stay is not granted, Marvell must risk having its customers'

products permanently enjoined without the opportunity to defend against CSIRO's claims, thus

causing unnecessary business losses.  Therefore, this factor supports a grant of partial stay.

### 3.    A Partial Stay Will Not Result in Prejudice to CSIRO.

CSIRO will not be prejudiced by a partial stay of its claims against the Marvell Customer

Defendants.  CSIRO's litigation against the Marvell Customer Defendants is still in its early

stages; the only substantive pleadings filed by the parties are the complaints and answers, and the

parties are in only the early stages of discovery.  Therefore, CSIRO cannot argue that it has

expended substantial efforts in the litigation of its claims which would be wasted if the claims

are partially stayed.  In addition, there is no impediment to the Marvell Action going forward

because CSIRO has stipulated to effective service of the complaint and both personal and subject

matter jurisdiction are proper.[9]  Because CSIRO's claims against the Accused Devices

Employing Marvell WLAN Parts involve the same issues raised in the Marvell Action, a partial

stay will not prevent CSIRO from fully litigating its claims of infringement in the Marvell

Action.  Indeed, such a partial stay would actually benefit CSIRO because it would allow CSIRO

to litigate all of its claims against the use of Marvell parts in a single action, rather than be forced

---

[9] Personal jurisdiction is proper because CSIRO has purposefully availed itself of the Texas courts to enforce its patents, has entered into contracts with Texas residents, has recruited Texas residents for employment in Texas, and has contacted, for the purposes of enforcing its patents, a corporation with its principal place of business in Texas. Subject matter jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1338, 35 U.S.C. § 101 et. seq., 28 U.S.C. § 2201 et. seq., and 28 U.S.C. § 1332(a).

to duplicate its efforts in multiple separate actions.

        **4.**      **Judicial Economy Dictates a Partial Stay of the Instant Litigation.**

The same facts and issues are at the heart of both the Marvell Action and the claims by CSIRO against the Accused Devices Employing Marvell WLAN Parts. Substantial amounts of the parties' and the Court's time and resources would be squandered if such facts and issues are litigated in two separate actions. At the same time, the issues involving Marvell's products differ from the issues involving non-Marvell products such that there will be no overlap between the two actions if the court were to grant a partial stay of the claims by CSIRO against the Accused Devices Employing Marvell WLAN Parts. Thus, this factor also militates in favor of a partial stay.

        **5.**      **Bringing CSIRO's Claims Against the Accused Devices Employing Marvell WLAN Parts Into the Marvell Action Would Create a Fair and Efficient Resolution and Remove the Taint of Townsend's Conflict.**

The most fair, judicially efficient, and proper resolution to these interrelated actions is to decide CSIRO's claims against the Accused Devices Employing Marvell WLAN Parts in the Marvell Action. Townsend's representation of CSIRO has "tainted" the instant action because CSIRO's patent infringement claims necessarily implicate Marvell's parts, and Townsend has been made privy to and has obtained highly proprietary, confidential, and privileged information about Marvell's technology and Marvell's litigation and decision making processes. Janofsky Decl. ¶¶ 28-35. In addition, as explained in the remainder of the present motion, Townsend's representation of CSIRO in this action creates a conflict of interest, which requires disqualification of Townsend as to those claims implicating the Accused Devices Employing Marvell WLAN Parts.

Staying CSIRO's claims against the Accused Devices Employing Marvell WLAN Parts

would remove the "taint" from the instant action caused by Townsend's representation of CSIRO and possession of confidential Marvell information.  By deciding the claims against the Accused Devices Employing Marvell WLAN Parts in the Marvell Action, this Court is given a clear and judicially efficient path to address the disqualification issues raised by Marvell in the present motion.  In fact, a grant of the partial stay would obviate the need for the Court to address the motion to disqualify.  Marvell seeks Townsend's disqualification only as to those claims arising from the Accused Devices Employing Marvell WLAN Parts.  Litigation of those claims in the Marvell Action, where Townsend is not involved in CSIRO's representation[10] and thus Townsend's representation of Marvell would not likely allow CSIRO to gain an unfair advantage, and would not implicate Marvell's concerns about Townsend's breach of its ethical duties to Marvell.  Indeed, excluding CSIRO's claims relating to the Accused Devices Employing Marvell WLAN Parts from the instant action would serve to effectively and efficiently resolve all of the issues raised in this motion.

**B.**     **In the Alternative, Marvell is Entitled to the Remedy of Disqualification as Either a Former Client or Current Client of Townsend.**

In the event that the Court declines to issue a partial stay of CSIRO's claims directed to the Accused Devices Employing Marvell WLAN Parts, Marvell is entitled to disqualification of Townsend as CSIRO's counsel as to those claims.  As a current client of Townsend, Marvell is entitled to an order disqualifying Townsend from further representation of CSIRO because that representation is directly adverse to Marvell's interests.  Townsend may argue that it has successfully jettisoned Marvell as a client in favor of the more lucrative representation of CSIRO.  Even if Townsend is able to convince the Court to accept its arguments, Marvell would also be entitled to the requested disqualification as a former client of Townsend.

_____

[10] See supra note 6.

Marvell can meet its burden of "demonstrating that disqualification is the proper and necessary remedy." See Ledwig v. Cuprum S.A., No. SA-03-CA-542, 2004 WL 573650, at *2 (W.D. Tex. Jan. 28, 2004) (citing Cramer v. Sabine Transp., Co., 141 F. Supp. 2d 727, 730 (S.D. Tex 2001)). Generally, "[m]otions to disqualify are determined using federal law." Id. The court "is not limited to the state's ethical rules, but may also consider national norms of professional conduct, including the ABA Model Rules and the Model Code." Biax Corp. v. Fujitsu Computer Sys. Corp., No. 2:06-CV-364, 2007 WL 1466638, at *1 (E.D. Tex. May 16, 2007) (citing In re Am. Airlines, Inc., 972 F.2d 605, 610 (5th Cir. 1992)). "[W]hether and how these rules are to be applied are questions of federal law." In re Am. Airlines, 972 F.2d at 610.

### 1.    Marvell Has Standing to Intervene in the Instant Action.

As an aggrieved client of Townsend, Marvell has standing to assert its rights in this action to seek disqualification of Townsend. See, e.g., Emmis Operating Co. v. CBS Radio, Inc., 480 F. Supp. 2d 1111 (S.D. Ind. 2007). Furthermore, both the Eastern and Western Districts of Texas have granted a non-party's motion to intervene for the purpose of moving to disqualify counsel. See Rembrandt Technologies, LP v. Comcast Corp., No. 2:05-CV-443, 2007 WL 470631, at *2 (E.D. Tex. Feb. 8, 2007); Ledwig, 2004 WL 573650, at *4.

### 2.    Townsend's Simultaneous Representations of CSIRO and of Marvell Constitute a Concurrent Conflict of Interest.

Marvell is entitled to disqualification of Townsend in the instant matter as a current client of Townsend. The Fifth Circuit has indicated a preference for the ABA Model Rules over the less stringent Texas ethics rules when addressing concurrent conflicts of interest. See Rembrandt, 2007 WL 470631, at *2 (citing In re Dresser, 972 F.2d 540 (5th Cir. 1992)). In particular, ABA Model Rule 1.7 provides:

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

ABA Model Rule 1.7(a). Under these rules, concurrent conflicts of interest are permitted only under certain limited circumstances with client consent. Id. at 1.7(b) (emphasis added). The Eastern District of Texas has interpreted Model Rule 1.7(a)(1) as requiring proof that: (1) the first client is a "current client" of the lawyer and (2) the lawyer's representation of the second client is "directly adverse" to the first client. Rembrandt, 2007 WL 470631, at *3. Here, Marvell remains a current client of Townsend and Marvell has expressly notified Townsend of its objections to Townsend's representation of CSIRO, which is directly adverse to Marvell's interests.

### a.   Marvell is a Current Client of Townsend.

As noted above, Townsend's representation of Marvell is ongoing and current. On March 12, 2007, the Chairman of Townsend requested that Marvell execute a written conflict waiver to allow Townsend to represent CSIRO in the negotiation of a license to the '069 patent for Marvell. That request would only have been made if Townsend understood itself to be representing Marvell at that time. On March 15, 2007, Townsend's Chairman acknowledged in writing that Marvell and CSIRO were both current clients of Townsend. Further, the letter stated Townsend's intention to jettison Marvell as a client in favor of continuing its representation of CSIRO. Marvell's letter dated March 19, 2007, expressly rejected Townsend's unilateral attempts to cure its conflict of interest by jettisoning Marvell as a client. Over the next few weeks, Townsend insisted on transferring its ongoing engagements to other firms over Marvell's objections. However, Townsend was well aware of Marvell's demands that Townsend continue

work on several matters and of Marvell's position that the transfer of files was inappropriate. Indeed, Townsend continued to work on several Marvell patent applications after sending its March 15, 2007 letter, including at least eight matters throughout April 2007. See Janofsky Decl. ¶¶ 14-27.

Even as of this date, Marvell remains Townsend's client in at least one matter. In January 2007, Townsend informed Marvell (a) that Townsend had mistakenly filed Marvell's confidential information with the PTO in a patent filing that Townsend had made on behalf of another client, and (b) that Townsend had also supplied Marvell's confidential information to Townsend's other client. Townsend has refused to identify this other client to Marvell, which precludes Marvell from working directly with that client to mitigate the damages resulting from Townsend's error. However, Townsend continues to represent Marvell in its efforts to address this problem. Id. ¶ 27. Thus, Townsend indisputably concurrently represents both CSIRO and Marvell without Marvell's written consent.

### b.   Townsend's Representation of CSIRO in the Instant Action is Directly Adverse to Marvell.

Townsend's representation of CSIRO in this matter is directly adverse to Marvell's interests. There is a strong likelihood that positions taken by Townsend, as well as findings made by this Court in relation to the Accused Devices Employing Marvell's WLAN Parts, could have a significant practical effect on Marvell, could prejudice Marvell in its own action, and could subject Marvell to the risk of financial harm. This direct adversity is created by 1) Townsend's representation of CSIRO in seeking a permanent injunction against the Accused Devices Employing Marvell WLAN Parts which, if granted, could permanently prohibit Marvell from selling the Marvell parts at issue to the Marvell Customer Defendants; and 2) Marvell's compliance with indemnification demands from its customers.

This Court's decision in Rembrandt is directly on point.  See Rembrandt, 2007 WL 470631.  That case involved claims of patent infringement based on major cable companies' use of technology in accordance with an industry standard.  Id. at *1.  One of the reasons for this Court's grant of disqualification in Rembrandt was that the non-party client (Time Warner) would be directly affected by the outcome of the suit because it was a member of that industry.  Thus, this Court granted Time Warner's motion to disqualify the law firm of Fish & Richardson from concurrent representation of Rembrandt and Time Warner because, inter alia, "[t]he practical significance of Rembrandt's infringement theory is to indict for patent infringement all major cable companies who follow the industry standards.  A finding of infringement and an injunction issued by this court against a cable company for compliance with industry standards would have a significant practical effect on Time Warner."  Id. at *4.  Tellingly, Time Warner had been sued separately by Rembrandt (using another law firm) for infringement of the very same patent that Fish & Richardson was asserting against other cable companies.  Indeed, the Rembrandt court found compelling the fact that all cases at issue were filed in the same district, and that "there is a likelihood that the positions taken by [Fish & Richardson] . . . could, as a practical matter, prejudice Time Warner in subsequent proceedings."  Id.

Like Rembrandt, the instant matter concerns claims of patent infringement against the Accused Devices Employing Marvell's WLAN Parts based on the Marvell Customer Defendants' adherence to the IEEE 802.11a/g/n standard.  Also comparable to the situation in Rembrandt, the Marvell Action and the instant action are both filed in the Eastern District of Texas.

Townsend's representation of CSIRO is directly adverse to Marvell's financial interests because the "practical significance" of CSIRO's claims is to permanently cut off Marvell's sales of the Marvell parts at issue in this suit.  CSIRO seeks a permanent injunction against the manufacture, use, importation, sale, or offer for sale of the Accused Devices Employing Marvell WLAN Parts.  Such an injunction could obliterate Marvell's ability to sell the Marvell products used in the Accused Devices Employing Marvell WLAN Parts.  Thus, if Townsend's counterclaims on behalf of CSIRO are successful, Marvell's revenues and profits from the sale of its parts to the Marvell Customer Defendants could be reduced to zero.  As was the case in Rembrandt, a finding of infringement and a permanent injunction issued by this Court clearly could have "a significant practical effect" on Marvell's ability to do business.

Moreover, because both actions involve essentially the same facts and issues, there is a strong likelihood that positions taken by Townsend, as well as findings made by this Court in relation to the Accused Devices Employing Marvell WLAN Parts, could prejudice Marvell in its own action.  As in Rembrandt, the Marvell action involves CSIRO's claim for infringement of the very same patent that Townsend is asserting against the Marvell Customer Defendants.

Townsend's representation of CSIRO is also directly adverse to Marvell's interests because of the indemnification agreements between Marvell and one of the Marvell Customer Defendants.  Impermissible adversity includes situations in which the adversity arises through an indemnification agreement between the non-party client and the defendants in the action brought by the offending law firm.  See, e.g., Snapping Shoals Elec. Membership Corp. v. RLI Ins. Corp., No. 1:05-CV-1714, 2006 WL 1877078 (N.D. Ga. July 5, 2006).  In Snapping Shoals, the third-party intervenor was under a contractual obligation to indemnify one of the defendants for liability arising out of a software contract, under which the plaintiff sued to recover.  The law

firm Paul Hastings, which was representing the plaintiff in <u>Snapping Shoals</u>, was concurrently representing the third-party intervenor in other matters. The court granted disqualification of Paul Hastings under these circumstances because the law firm "is representing a party whom, if successful, puts a current client directly at risk of financial harm." <u>Id.</u> at *4.

Here, as in <u>Snapping Shoals</u>, one of the Marvell Customer Defendants in the present action has contacted Marvell and asked Marvell to indemnify it as a result of CSIRO's infringement claims. Marvell has acknowledged this claim for indemnification, and thus will be put directly at risk of financial harm if Townsend succeeds in its representation of CSIRO against the Marvell Customer Defendants. <u>See</u> Janofsky Decl. ¶¶ 13, 16.

Because of the foregoing, Townsend's representation of CSIRO in the instant action is directly adverse to Marvell. Thus, under both prongs of the <u>Rembrandt</u> test, Townsend's concurrent representation of Marvell and CSIRO constitutes an impermissible conflict of interest and, therefore, Townsend should be disqualified from representing CSIRO on claims relating to the Accused Devices Employing Marvell's WLAN Parts.

### c.   Townsend's Jettisoning of Marvell Does Not Cure Its Concurrent Representation Conflict.

Marvell anticipates that Townsend will claim, as it has done previously, that although it is still winding up work for Marvell, it has terminated the relationship and has therefore cured its conflict. This defense is both factually and legally indefensible. With regard to the facts, in his letter of March 15, 2007, Townsend's chairman admitted that there was concurrent representation as of the date the conflict arose. Janofsky Decl., Ex. 3. Townsend continued to represent Marvell well afterwards although Townsend was in the process of jettisoning Marvell. <u>Id.</u> ¶ 23-27. Thus, there was concurrent representation as of the date Marvell demanded that Townsend cease its representation of CSIRO in the actions against Marvell's customers and later.

There is also no legal basis for Townsend's efforts to cure its conflict by unilaterally terminating its relationship with Marvell.  Under the "hot potato" doctrine, various federal courts have held that a law firm that knowingly undertakes adverse concurrent representation may not avoid disqualification by withdrawing from the representation of the less favored client before the disqualification motion is made.  See, e.g., Harte Biltmore Ltd. v. First Pa. Bank, N.A., 655 F.Supp. 419, 421 (S.D. Fla. 1987); see also Picker Int'l, Inc. v. Varian Assocs., Inc., 670 F. Supp. 1363, 1366 (N.D. Ohio 1987); Ransburg Corp. v. Champion Spark Plug Co., 648 F.Supp. 1040, 1044 (N.D. Ill. 1986); see generally Unified Sewerage Agency of Washington County, Oregon v. Jelco Inc., 646 F.2d 1339, 1345 n.4 (9th Cir. 1981).  Here, Townsend sought to cure its concurrent representation problem by jettisoning Marvell as a client in March 2007.  Janofsky Decl. ¶¶ 18-27.  Such conduct is prohibited and does not solve Townsend's conflict problem.

Nor may Townsend rely on the so-called "thrust-upon" exception to the "hot potato" rule, which precludes application of the "hot potato" rule where the lawyer plays no role in creating the conflict of interest.  See generally Fla. Ins. Guar. Ass'n, Inc. v. Carey Can., Inc., 749 F. Supp. 255, 261 (S.D. Fla. 1990) ("[T]o require disqualification for the mere happenstance of an unseen concurrent adverse representation-where the representations are not substantially related and client confidences are not endangered-would unfairly prevent a client from retaining counsel of choice and would penalize an attorney who had done no wrong.").  The present situation is not one where Townsend played no role in the creation of the conflict of interest.  To the contrary, Townsend knowingly sued Marvell's customers on behalf of CSIRO and sought a permanent injunction against the Accused Devices Employing Marvell's WLAN Parts, setting in motion the chain of events leading to the conflict of interest.  In this regard, on or about March 12, 2007, Townsend requested that Marvell execute a written conflict waiver so as to allow Townsend to

represent CSIRO in the negotiation of a license to the '069 patent to be granted to Marvell.  On

or about March 13, 2007, Eric Janofsky, Marvell's Vice President of Intellectual Property and

General Patent Counsel, responded in writing to Townsend's March 12, 2007 request for a

conflict waiver.  In this letter, Mr. Janofsky stated that Marvell would not be willing to waive

Townsend's conflicts of interest arising from its representations of CSIRO in the instant action

against Marvell's customers, and that Marvell firmly believed that Townsend's representation of

CSIRO in this lawsuit was adverse to the interests of Marvell, creating conflicts of interest for

Townsend.  Indeed, it is likely that Townsend knew that it was suing at least some of Marvell's

customers prior to Mr. Janofsky's letters because Marvell has published the names of customers,

including some of the Marvell Customer Defendants, on its web page.  Janofsky Decl. ¶¶ 14-17.

### 3. Townsend Should Be Disqualified Because the Subject Matter of Townsend's Representations of Marvell and of CSIRO Are Substantially Related and Because There is a Reasonable Probability That Townsend Will Misuse Marvell's Highly Confidential Information.

Even if Marvell were not a current client of Townsend, Marvell would be entitled to

disqualification based on Townsend's former representations of Marvell in various intellectual

property matters, including WLAN matters.  In the Fifth Circuit, disqualification of counsel's

former representations can be pursued on more than one basis.  "Generally, counsel would be

disqualified: (1) if the subject matter of the present and former representations are substantially

related; or (2) if the movant's former attorney, now sought to be employed by the non-movant,

possesses relevant, confidential information such that there is a reasonable probability that the

information could be used to the former client's disadvantage."  Power Mosfet Technologies,

L.L.C. v. Siemens AG, No. 2:99-CV-168, 2002 WL 32785219, at *1 (E.D. Tex. Sept. 30, 2002);

see also In re Am. Airlines, 972 F.2d at 615.  Here, Marvell is entitled to the remedy of

disqualification as a former client of Townsend, and may assert each basis of disqualification against Townsend as set forth below.

### a.  The Subject Matter of Townsend's Present and Former Representations are Substantially Related.

Disqualification of counsel based on prior representation is governed by the "substantial relationship" test.  "Under the 'substantial relationship' test, a party seeking to disqualify opposing counsel on the ground of a former representation must establish two elements: 1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and 2) a substantial relationship between the subject matter of the former and present representations."  Ledwig, 2004 WL 573650 at *2 (citing In re Am. Airlines, Inc., 972 F.2d at 614); Tex. Disciplinary R. Prof'l Conduct Code Ann. § 1.09(a)(3) (2007).  After the movant meets this two-part test, "'the court will irrebuttably presume that relevant confidential information was disclosed during the former period of representation.'"  Id. (quoting In re Am. Airlines, Inc., 972 F.2d at 614).

Here, the first element is satisfied because there can be no real dispute that an actual attorney-client relationship existed between Townsend and Marvell.  The second element is also satisfied because there is a substantial relationship between the subject matter of Townsend's former representation of Marvell and Townsend's current representation of CSIRO.  At the heart of CSIRO's claims is the design of Marvell IEEE WLAN Standard 802.11a/g/n products, which design is comprised of the very patents that are the subject of Townsend's representation of Marvell.

"In determining whether a substantial relationship exists, the Court must examine the issues that arose in the previous representation and the issues likely to arise in the current one."  Biax Corp., 2007 WL 1466638, at *1 (citing Power Mosfet Technologies, 2002 WL at

32785219, at *2).  "Some of the factors to be considered include '(1) the factual similarities between the current and former representations, (2) the similarities between the legal questions posed, and (3) the nature and extent of the attorney's involvement with the former representation.'"  Id. (finding a substantial relationship between the instant matter and former representation where both involve "similar liability issues, similar scientific issues, and similar defenses and strategies") (quoting Power Mosfet Technologies, 2002 WL 32785219, at *2).

Here, Townsend's representations of Marvell and of CSIRO share many similar factual and legal issues, and Townsend's representation of Marvell during the last seven years was broad, extensive, and far-reaching.  Townsend has a substantial history of representing Marvell in a multitude of matters relating to Marvell's IEEE WLAN Standard 802.11 products, including the Marvell WLAN products that form the basis of CSIRO's claims in the current litigation. Townsend's representations include, but are not limited to, patent prosecution, trademark prosecution, registration of domain names, and the development, selection, and enforcement of intellectual property rights.  As of March 16, 2007, Townsend was prosecuting approximately 110 patent applications on behalf of Marvell, including 55 in the United States.  At least thirteen involved networking technology and products.  Townsend also served as Marvell's counsel for nine patent applications involving wireless LAN technologies.  In addition, some of these patent prosecution matters involved circuit technology, which also exposed Townsend to Marvell's proprietary network-related devices and technology.  Janofsky Decl. ¶¶ 8-9, 19-21, 28-30.

On Marvell's behalf, Townsend had prosecuted or was prosecuting about 288 trademark applications.  At least 197 of these involved networking products, of which at least 126 are related to a wireless LAN product.  Id. ¶ 20.  Townsend also represented Marvell on numerous other matters including at least 30 domain name registrations, monitoring and providing opinions

about potential trademark conflicts, and providing trademark counseling.  Townsend represented

Marvell in two oppositions before the United States Patent and Trademark Office and the

Trademark Trial and Appeal Board, and has done other litigation work, including work that has

not resulted in the filing of any action.  It represented Marvell International in <u>Marvell</u>

<u>International v. Marvell Technology, Inc.</u>, filed in the United States District Court for the

Northern District of California, a trademark dispute concerning Marvell's wireless LAN and

other products.  Additionally, Townsend has represented Marvell in the negotiation and drafting

of settlement documents.  <u>Id.</u> ¶ 30.

In summary, Townsend's previous representation of Marvell concerned almost every

aspect of the intellectual property associated with Marvell's products, including the products

underlying CSIRO's claims in the present litigation.  Similarly, the subject matter of Townsend's

representation of CSIRO as to the Accused Devices Employing Marvell WLAN Parts concerns

the intellectual property embodied in the Marvell products and whether such products read on

the '069 Patent.  CSIRO's claims are directed to the determination of whether certain of

Marvell's products practicing the IEEE Standard 802.11a/g/n work in the manner recited in

CSIRO's claims.  Townsend's representations of Marvell are directed to detailing the manner in

which present and future Marvell products, including those practicing the IEEE Standard

802.11a/g/n, work.  The facts surrounding the manner in which the Marvell WLAN 802.11a/g/n

products work, and their effects on Marvell's rights under intellectual property law, are at issue

in both representations.  As a result, both Townsend's previous representation of Marvell and its

current representation of CSIRO in the present lawsuit necessarily implicate similar factual and

legal issues, and there is a "substantial relationship" between the subject matter of the two

representations.  Thus, Townsend should be presumed to have been made privy to Marvell's

highly confidential and proprietary information regarding such intellectual property, and should

be disqualified from representing CSIRO in the instant action.

> **b.      Townsend Possesses Relevant and Confidential Information
> Such That There is a Reasonable Probability That The
> Information May Be Used To Marvell's Disadvantage.**

Even if the Court disagrees that Townsend's representations of Marvell and CSIRO are

substantially related and declines to presume Townsend's access to relevant and confidential

Marvell information, Marvell is entitled to disqualification because it can prove that Townsend

actually does have access to such information.  As noted above, another basis for disqualification

of opposing counsel may be found "if the movant's former attorney, now sought to be employed

by the non-movant, possesses relevant, confidential information such that there is a reasonable

probability that the information could be used to the former client's disadvantage."  Power

Mosfet Technologies, 2002 WL 32785219, at *1; Tex. Disciplinary R. Prof'l Conduct Code Ann.

§ 1.09(a)(2) (2007); see also In re Am. Airlines, 972 F.2d at 615.

Here, Marvell gave Townsend access to substantial amounts of confidential information

during Townsend's prior representation of Marvell relating to WLAN products.  As described

above, Townsend's representation of Marvell has been extensive and in-depth.  In 2006 alone,

Townsend performed $1 million worth of legal work for Marvell; between November 1, 2006, at

least sixteen Townsend employees worked on Marvell matters.  Unsurprisingly, during this

extensive representation, Townsend was necessarily made privy to and has obtained highly

proprietary, confidential, and privileged information about Marvell's personnel, legal document

system policies, wireless LAN technology, and litigation and decision-making processes.  See,

e.g., Janofsky Decl. ¶¶ 29-35.  Through its work drafting patent applications about advances in

Marvell's WLAN technology for Marvell, and through its repeated and direct contact with

Marvell's engineers, Townsend has gained extensive knowledge from key Marvell engineering

personnel about the design and development of Marvell's products practicing the IEEE Standard 802.11, including those products which are the basis of CSIRO's claims against the Marvell Customer Defendants.[11] As a result of prosecuting Marvell's wireless LAN patents, Townsend has knowledge of the future direction of Marvell's products, including knowledge of what Marvell's "next generation" 802.11n products will look like. As yet another example of Townsend's access to confidential, privileged information, in representing CSIRO in various trade disputes concerning WLAN technology, and in connection with such representation, Townsend engaged in extensive discussions with Marvell's in-house counsel regarding litigation strategy including Marvell's attitude toward settlements. Id. ¶¶ 7-8, 28-35.

Furthermore, there is a reasonable probability that Townsend would use or disclose Marvell's confidential information in the present litigation to Marvell's disadvantage because such information goes to the heart of CSIRO's claims against the Marvell Customer Defendants. To prove infringement by the Marvell Customer Defendants, CSIRO must prove that their products, which incorporate Marvell's WLAN products as integral components, operate as claimed in CSIRO's patent. By working on Marvell's patent applications, Townsend has gained knowledge of the inner workings of Marvell's products, which knowledge can be used by Townsend to prove CSIRO's case against the Marvell Customer Defendants. Id. ¶¶ 36-38. The information gained by Townsend includes information that is protected by the attorney-client privilege and that therefore would otherwise be inaccessible to CSIRO via the discovery process.

---

[11] Townsend may attempt to downplay the extent of its access to relevant and confidential Marvell information by arguing that because the patents that it prosecuted on Marvell's behalf concerned 802.11n technology, it remained ignorant of Marvell's 802.11a/g technology. Such an argument would be inapposite for two reasons. First, CSIRO recently amended its counterclaims in the present suit to include products practicing the 802.11n standard, thus rendering Townsend's knowledge squarely relevant to the products at issue. First Am. Answer and Countercl. to Compl. for Declaratory J. ¶¶ 82-84. Moreover, in order to prosecute patents relating to Marvell's 802.11n technology, Townsend had to gather information about the background technologies, i.e., the 802.11a/g technology. See Janofsky Decl. ¶¶ 34-35.

Moreover, as a result of prosecuting Marvell's wireless LAN patents, Townsend has knowledge of the future direction of Marvell's products, including knowledge of what Marvell's "next generation" 802.11n products will look like. Id. ¶ 38. An important part of the present case (and indeed of any patent case) is the claim construction, i.e., the interpretation of the patent terms to determine exactly what products it covers. By knowing in advance what Marvell's future products will look like, Townsend can tailor CSIRO's claim construction arguments to try and ensure that CSIRO's patent reads on Marvell's future products and thereby reads on the future products of the Marvell Customer Defendants that will incorporate Marvell's future products. CSIRO's amendment of its complaint to expand the present action to cover these products demonstrates that the knowledge Townsend has gained from representing Marvell will be directly useful to CSIRO. First Am. Answer and Countercl. to Compl. for Declaratory J. ¶¶ 82-84.

Finally, in prosecuting the Marvell patents, Townsend necessarily learned of the inventors of Marvell's wireless LAN products and the key engineers involved with the development of those products, and has engaged in direct and extensive contact with those inventors and engineers. Janofsky Decl. ¶¶ 31-33, 37. Thus, because of its representation of Marvell, Townsend would know exactly who it needs to depose to prove CSIRO's case against the Marvell Customer Defendants, and has important insights into exactly what questions to ask them and any potential weaknesses of these witnesses which can be exploited for CSIRO's benefit. See id.

These examples merely illustrate the numerous potential opportunities for Townsend's misuse of highly confidential, relevant, and/or privileged Marvell information in the present lawsuit. Townsend has admitted that it has already disclosed confidential Marvell information to

third parties, including other Townsend client(s), on at least one occasion.  See discussion at

Section III(B)(2)(a), supra.  Disqualification is the only remedy that can ensure that Townsend

will not engage in such misuse.

### 4.   The Likelihood of Public Suspicion Outweighs CSIRO's Right to Counsel of Choice.

The societal interests implicated by Townsend's conflict of interest also militate in favor

of its disqualification from further representation of CSIRO as to those claims arising from the

Accused Devices Employing Marvell WLAN Parts.  In the Fifth Circuit, "court[s] must take into

account not only the various ethical precepts adopted by the profession but also the social

interests at stake."  F.D.I.C. v. U.S. Fire Ins. Co., 50 F.3d 1304, 1314 (5th Cir. 1995).  Among

the factors courts have considered are "'whether a conflict has (1) the appearance of impropriety

in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of

public suspicion from the impropriety outweighs any social interests which will be served by the

lawyer's continued participation in the case.'"  Id. (quoting In re Dresser, 972 F.2d at 544).  In

Rembrandt, this court stated that "a disqualification motion requires the court to balance the

likelihood of public suspicion against a party's right to counsel of choice."  Rembrandt, 2007 WL

470631, at *4 (citing F.D.I.C., 50 F.3d at 1314).  In doing so, the Court considered, inter alia,

Time Warner's "reasonable expectations," as well as the prejudice to Rembrandt and

Rembrandt's interest in retaining counsel of choice that was familiar with the technology at issue

in the case.  Id.  The court concluded that "this interest is not sufficient to overcome the grounds

for disqualification" because of Time Warner's "reasonable expectations" and the fact that the

prejudice could have been avoided had the law firm taken steps to prevent the conflict of interest.

Id.

The public suspicion arising out of the conflict of interest in this case outweighs any social interest in having Townsend continue its representation of CSIRO.  As noted above, supra Section III(B)(2)(b), Townsend, through its extensive contacts with Marvell, has been privy to and has obtained highly proprietary, confidential, and privileged information about Marvell, as well as technical information about the Marvell products involved in the instant action and the future direction of Marvell's products.  This information would be extremely useful in the prosecution of the instant action on behalf of CSIRO because the knowledge gained by Townsend can be used in arguing CSIRO's case against the Marvell Customer Defendants.  In addition, access to Marvell's confidential information has given Townsend an unfair advantage in the discovery process as well as the tailoring of CSIRO's claim construction arguments.

As in Rembrandt, Marvell's reasonable expectations that the confidential, proprietary information given to Townsend would not be used by Townsend against Marvell's interests in a subsequent representation of a third party outweighs CSIRO's choice of Townsend.  On balance, CSIRO will be able to secure other counsel to prosecute this action without undue delay (especially because the present litigation is only in the early stages of discovery), whereas Marvell will suffer great prejudice if Townsend's representation of CSIRO in matters concerning the Accused Devices Employing Marvell's WLAN Parts is allowed to continue.

## IV.    CONCLUSION

For the foregoing reasons, Marvell's motion to stay should be granted.  The claims by CSIRO against the Accused Devices Employing Marvell WLAN Parts should be stayed pending resolution of the Marvell Action.  Alternatively, if the Court does not grant the requested stay, Marvell respectfully requests that Townsend be disqualified from further representation of CSIRO as to those claims directed to the Accused Devices Employing Marvell WLAN Parts.

DATED:  July 3, 2007

Respectfully submitted,

/s/ Andy Tindel w/ Permission of Lead
Attorney
ANDY TINDEL
State Bar No. 20054500
PROVOST UMPHREY LAW FIRM, L.L.P.
112 East Line Street, Suite 304
Tyler, Texas 75702
Telephone: (903) 596-0900
Facsimile: (903) 596-0909
Email: atindel@andytindel.com

Warren S. Heit (Lead Attorney)
(*pro hac vice* application to be filed)
CA State Bar No. 164658
Email: wheit@whitecase.com
Taryn Lam
(*pro hac vice* application to be filed)
CA State Bar No. 236124
Email: tlam@whitecase.com
Marc Ackerman
(*pro hac vice* application to be filed)
NY State Bar No. MA-7185
Email: mackerman@whitecase.com
WHITE & CASE L.L.P.
3000 El Camino Real
5 Palo Alto Square, 9th Floor
Palo Alto, CA 94306
Telephone: (650) 213-0300
Facsimile: (650) 213-8158

Attorneys for Intervenors,
MARVELL SEMICONDUCTOR, INC.
MARVELL ASIA PTE., LTD.
MARVELL INTL., LTD.

## CERTIFICATE OF CONFERENCE

Counsel has conferred with opposing counsel in a good faith attempt to resolve the matter without court intervention and the motion will be opposed.  Defendant CSIRO opposes the motion.  Counsel contacted counsel for Plaintiffs/Counter-Defendants on June 28-29, 2007. Plaintiffs/Counter-Defendants Microsoft and Netgear indicated that they would not oppose the motion whereas  Hewlett-Packard stated that it opposes the motion to stay and takes no position on the motion to disqualify.

/s/ Andy Tindel w/ Permission of Lead Attorney
ANDY TINDEL

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this motion was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this the 3rd day of July, 2007.

/s/ Andy Tindel w/ Permission of Lead Attorney
ANDY TINDEL