UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington corporation, HEWLETT-PACKARD COMPANY, a Delaware corporation, NETGEAR, INC., a Delaware corporation,<br><br>              Plaintiffs,<br><br>    v.<br><br>COMMONWEALTH SCIENTIFIC AND INDUSTRIAL RESEARCH ORGANISATION,<br><br>              Defendant. | Case No. 6:06 CV 00549 LED |
| COMMONWEALTH SCIENTIFIC AND INDUSTRIAL RESEARCH ORGANISATION,<br><br>              Counterclaimant,<br><br>    v.<br><br>MICROSOFT CORPORATION, a Washington corporation, HEWLETT-PACKARD COMPANY, a Delaware corporation, NETGEAR, INC., a Delaware corporation,<br><br>              Counterdefendants. | |

**DEFENDANT CSIRO'S OPPOSITION TO
MARVELL'S MOTION TO INTERVENE**

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................. 1

III. MARVELL LACKS STANDING TO INTERVENE .................................................... 5

    A. MARVELL CANNOT MEET THE REQUIREMENTS FOR INTERVENTION AS OF RIGHT PURSUANT TO RULE 24(A) ............................................................5

        1. Marvell's motion is not timely ................................................................ 6

        2. Marvell has no cognizable interest in this case ...................................... 8

        3. Marvell's interests would not be impaired by denying intervention ........................................................................................... 13

        4. Marvell's interests are adequately protected by the existing parties ..................................................................................................... 13

    B. MARVELL SHOULD NOT BE ALLOWED TO INTERVENE UNDER RULE 24(B) ......................................................................................................................14

IV. CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

Deus v. Allstate Ins. Co.,
 15 F.3d 506 (5th Cir. 1994) .................................................................................................. 15

Doe v. Glickman,
 256 F.3d 371 (5th Cir. 2001) ........................................................................................ 7, 8, 9

Edwards v. City of Houston,
 78 F.3d 983 (5th Cir. 1996) .................................................................................................. 6, 7

Ericsson Inc. v. InterDigital Communications Corp.,
 418 F.3d 1217 (Fed. Cir. 2005) .............................................................................................. 6

General Ins. Co. v. Aisha's Learning Center,
 2004 WL 2533575 (N.D. Tex. Nov. 9, 2004) ...................................................................... 12

Green v. United States,
 996 F.2d 973 (9th Cir. 1993) ................................................................................................ 10

In re Healthsouth Corp. Ins. Litig.,
 219 F.R.D. 688 (N.D. Ala. 2004) ......................................................................................... 12

iWork Software, LLC v. Corporate Exp., Inc.,
 2003 WL 22494851 (N.D. Ill Nov. 4, 2003) ........................................................................ 11

New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.,
 732 F.2d 452 (5th Cir. 1984) ............................................................................................ 9, 11

Nikon Corp. v. ASM Lithography B.V.,
 222 F.R.D. 647 (N.D. Cal. 2004) ..................................................................................... 9, 10

Ouch v. Sharpless,
 237 F.R.D. 163 (E.D. Tex. 2006) ......................................................................................... 13

Reid v. General Motors Corp.,
 240 F.R.D. 257 (E.D. Tex. 2006) ......................................................................................... 16

Rigco, Inc. v. Rauscher Pierce Refsnes, Inc.,
 110 F.R.D. 180 (N.D. Tex.1986) .......................................................................................... 12

Saldano v. Roach,
 363 F.3d 545 (5th Cir. 2004) .................................................................................................. 8

Sierra Club v. Espy,
 18 F.3d 1202 (5th Cir. 1994) .................................................................................................. 7

United States v. Franklin Parish School Bd.,
  47 F.3d 755 (5th Cir. 1995) .................................................................................................. 6

United States v. Perry County Board of Education,
  567 F.2d 277 (5th Cir. 1978) ................................................................................................ 8

Washington Elec. Coop v. Massachusetts Mun. Wholesale Elec. Co.,
  922 F.2d 92 (2d Cir. 1990) .................................................................................................. 15

**Rules**

Federal Rule of Civil Procedure 24(a) ................................................................................. passim

Federal Rule of Civil Procedure 24(b) ................................................................................. 15, 16

I.  **INTRODUCTION**

This is an odd motion, in which Marvell[1] seeks to intervene, but only for the express purpose of disrupting the litigation. Though Marvell claims that "its interests are at the core of the dispute" (Marvell's Motion to Intervene ("Mot.") at 2), it apparently does not fully seek to join this case to litigate economically alongside the plaintiffs/cross-defendants, but only to throw a monkey wrench in the proceedings by staying certain select claims or by disqualifying CSIRO's longtime counsel. Neither relief is justified, and Marvell lacks standing to assert any such claims in intervention. Marvell's only legitimate interest here is its secondary economic interest in the outcome of the case, which under clear Fifth Circuit precedent cannot serve as the basis for intervention. For that and the other reasons set out below, Marvell's application to intervene should be denied.[2]

II.  **BACKGROUND**

The background facts concerning this dispute are set out in detail in CSIRO's Opposition to Marvell's Motion to Stay Proceedings and, in the Alternative, to Disqualify Plaintiff's Counsel, which is filed herewith and incorporated as if set forth fully herein. The salient facts are summarized below.

In 1996 CSIRO was awarded a patent entitled "Wireless LAN (U.S. Patent No. 5,487,069, or the "'069 patent"), which provides a technique for transmitting data at high speed and with high reliability using radio frequency signals within an indoor environment. (Declaration of Robert Colwell ("Colwell Decl.") at ¶ 3.) In 1999, the Institute of Electrical and Electronics Engineers ("IEEE") adopted CSIRO's technology as the basis for the 802.11a

---

[1]  Movants Marvell Semiconductor, Inc., Marvell Asia Pte., Ltd., and Marvell Intl., Ltd. are referred to collectively herein as "Marvell." Commonwealth Scientific and Industrial Research Organization is referred to herein as "CSIRO."

[2]  Marvell has filed motions to intervene in both the Microsoft and Toshiba cases. With the exception of sections identifying the parties, the motions are identical. Similarly, CSIRO's oppositions to those motions are identical, again with the exception of sections identifying the parties.

wireless LAN standard. (Id.) The IEEE 802.11g standard (released 2003) and forthcoming IEEE 802.11n standard are also based on CSIRO's technology covered by the '069 patent. (Id.)

On or about October 2002, CSIRO retained Townsend & Townsend & Crew ("Townsend") to assist it in developing and implementing a strategy for licensing the '069 patent. (Id. ¶ 4.) Working with and through Townsend, CSIRO approached the makers of finished products that potentially infringed its patent, including D-Link Corp., Belkin Corp., Microsoft Corp., Buffalo Technology, and Accton Americas, Inc. (Id.) CSIRO did not pursue the makers of *components* of such finished products, like Marvell, Intel or other chip makers. (Id.) In 2003 and 2004, CSIRO attempted to negotiate licenses with infringing end product manufacturers. (Id. ¶ 5.) Those negotiations were unsuccessful. (Id.)

Unable to reach a licensing agreement for the '069 patent through negotiation, CSIRO filed suit in this Court to enforce its patent on March 5, 2005. (CSIRO v. Buffalo Technology (USA), Inc., No. 6:06-CV-324-LED). The defendant in the first suit is a manufacturer of finished products that use CSIRO's patented technology.[3] (Colwell Decl. ¶ 5.) On May 9, 2005, Microsoft Corporation, Apple Computer, Inc., Hewlett-Packard Company, and Netgear, Inc., all manufacturers of finished products using 802.11 technology, in an obvious attempt to avoid this court's jurisdiction filed an affirmative suit in the Northern District of California against CSIRO seeking declaratory judgment concerning the validity and scope of the '069 patent.[4] (Microsoft

---

[3]  As this Court is well aware, a Markman ruling in that case was issued on May 8, 2006, and a summary judgment order on validity and infringement was issued on November 14, 2006—the latter finding that Buffalo infringes the asserted claims of CSIRO. (Declaration of Dr. Jack Steele ("Steele Decl.") ¶ 5.) Those rulings are now on appeal.

[4]  Marvell's motion is based, in part, on its purported indemnity agreements with two customers, one a defendant in the Toshiba suit and another a plaintiff in the Microsoft case. The indemnity agreement with Marvell's Microsoft customer was signed on January 19, 2005. (Declaration of Guy D. Calladine ("Calladine Decl.") ¶¶ 5, 7 & Ex. 2.) The parties to that agreement signed a forbearance agreement concerning such indemnities on May 5, two days before Microsoft filed its suit against CSIRO. (Calladine Decl. ¶¶ 5-6 & Ex. 1.) The second indemnity agreement, with the defendant in the Toshiba case, was signed on September 4, 2006. (Calladine Decl. ¶¶ 5, 8 & Ex. 3.) Marvell *never* mentioned the indemnity agreements to Townsend or CSIRO, until March 2007, just days before it filed suit against Townsend in

Corp. v. CSIRO, Case No. 6:06-cv-00549-LED.) The same day, two other manufacturers (Intel Corporation and Dell, Inc.) filed a similar affirmative suit against CSIRO. (Intel Corporation et al. v. CSIRO, Case No. 6:06-cv-00551-LED.) Townsend represents CSIRO in both the Microsoft and Intel cases, which have been transferred to this Court. (Colwell Decl. ¶ 2.)

On or about June 22, 2005, an attorney representing Marvell called Townsend to inquire about whether CSIRO would grant Marvell a license under the '069 patent. (Colwell Decl. ¶¶ 6-7.) Townsend told Marvell that it did not need such a license because CSIRO had no intention of bringing enforcement proceedings against wireless *component* manufacturers such as Marvell. (Id.) Marvell was obviously aware that Townsend represented CSIRO at that time, and Marvell's lawyer even commented he thought CSIRO and Townsend were "winning" the Buffalo litigation. (Id. ¶ 7.)

Townsend had previously represented Marvell in certain trademark application and domain name registration matters, and in late 2005 Marvell began to send Townsend additional patent application work. (Steiner Decl. ¶ 2; Haughey Decl. ¶ 2; Tabibi Decl. ¶ 2.) In the course of forming that relationship, Marvell made it clear to Townsend that it understood that Townsend represented CSIRO in the '069 patent enforcement actions, but never objected or suggested that its representation of CSIRO was in any way adverse to Marvell. (Tabibi Decl. ¶ 3.) In contrast, where Marvell believed other Townsend work might potentially lead to a conflict of interest with respect to other Townsend clients, it specifically requested that Townsend erect ethical walls to prevent dissemination of Marvell confidential information between attorneys at the firm (and Townsend complied). (Steiner Decl. ¶¶ 9-10 & Exhs. 4-5.) During the summer of 2006, Marvell made complaints about the quality of Townsend's patent work and for a time stopped sending the firm new applications. (Haughey Decl. ¶ 5 & Ex. 1; Steiner Decl. ¶ 8.) In October 2006, without explanation, Marvell tactically resumed sending patent applications to Townsend,

---

California. (Declaration of James G. Gilliland, Jr. ("Gilliland Decl.") ¶ 6; Declaration of Paul C. Haughey ("Haughey Decl.") ¶ 9; Declaration of Ardeshir Tabibi ("Tabibi Decl.") ¶ 6; Declaration of Mark A. Steiner ("Steiner Decl.") ¶¶ 11-12.)

including the work Marvell now claims creates the conflict of interest. (Haughey Decl. ¶ 6; Tabibi Decl. ¶ 4.)

On December 22, 2006, CSIRO filed the Toshiba action. (CSIRO v. Toshiba America Info. Sys., Inc., Case No. 6:06-CV-550-LED.) Again, Marvell did not tell Townsend or CSIRO at that time that it believed the new suit created a conflict or mention that it had an indemnity agreement with any defendant. (Gilliland Decl. ¶ 6; Haughey Decl. ¶ 9; Tabibi Decl. ¶ 6; Steiner Decl. ¶¶ 11-12.) Without raising any concerns about a purported conflict of interest, on March 5, 2007 Marvell again contacted CSIRO to ask about the possibility of licensing its '069 technology. (Colwell Decl. ¶ 9.) Townsend responded on behalf of CSIRO, and told Marvell that it did not need a license. (Id.) Marvell responded in turn, telling Townsend that it was interested in a broader license that would cover its customers as well. (Id.) Townsend responded that if Marvell wanted to discuss a license, Townsend would need a conflict waiver, as it would be negotiating with its own client. (Id. & Ex. 1.)

On March 12, 2007 Marvell changed its tune, telling Townsend that it believed that the initial licensing conversations between Marvell and Townsend (which began in June 2005, more than a year-and-a-half earlier) suggested a conflict of interest for the firm. (Gilliland Decl. ¶¶ 4-5; Steiner Decl. ¶¶ 11-12.) In a follow-up letter the next day, Marvell revealed for the first time that it supposedly had indemnity agreements with parties in CSIRO's '069 patent litigation and accusing Townsend of a conflict of interest. (Gilliland Decl. ¶ 6.) Townsend responded on March 15, 2007, denying that it was aware of any conflict, and questioning the timing of the belated disclosure. (Id. ¶ 7.)

In a March 19, 2007 letter, Marvell insisted that Townsend withdraw as CSIRO's counsel, and two days later, on March 21, filed suit in California state court accusing Townsend of committing malpractice as a result of its conflict of interest. (Gilliland Decl. ¶ 8 & Ex. 1.) In light of the tactical malpractice suit Townsend, of course, withdrew as Marvell's counsel and began an orderly transition of all work to new counsel. (Haughey Decl. ¶ 10 & Ex. 1; Tabibi Decl. ¶ 7; Steiner Decl. ¶ 3 & Ex. 2.)

4

On May 4, 2007, Marvell filed its own declaratory judgment suit against CSIRO in this Court, seeking an order that its products do not infringe the '069 patent. (Marvell Semiconductor, Inc., et al. v. CSIRO, No. 6:07 CV 204 (LED).) On May 16, 2007 Marvell filed a motion for a preliminary injunction in the California malpractice action seeking to disqualify Townsend from representing CSIRO, including in litigation before this Court. (Calladine Decl. ¶ 2.) Townsend opposed the motion, and on June 13, 2007 the California Superior Court denied the motion on the grounds that it lacked authority to disqualify counsel appearing in this Court. (Id.) Townsend has strenuously denied Marvell's allegations and continues vigorously to oppose the claims in that suit. (Id.)

By way of the present motions, Marvell asserts that Townsend has acted in ways compelling its disqualification. However, and as shown below, Marvell ignores the plain fact that there is no substantive overlap between any of the work Townsend ever performed for Marvell and Townsend's representation of CSIRO in this case or any of the other '069 enforcement actions (all of which are now before or on appeal from this Court). (Haughey Decl. ¶¶ 2, 6-8; Tabibi Decl. ¶¶ 4-5; Steiner Decl. ¶¶ 4-5; Furniss Decl. ¶¶ 6-8; Colwell Decl. ¶¶ 6-12.) As shown in the companion opposition to Marvell's other motions, Townsend acquired from Marvell no confidential information of any relevance to this case,[5] and no Townsend lawyer who worked for Marvell has ever discussed that work in any way with any Townsend lawyer representing CSIRO. (Id.)

### III. MARVELL LACKS STANDING TO INTERVENE

#### A. MARVELL CANNOT MEET THE REQUIREMENTS FOR INTERVENTION AS OF RIGHT PURSUANT TO RULE 24(A)

Marvell seeks to intervene under Federal Rule of Procedure 24(a)(2), which allows non-party intervention only when the applicant "claims an interest relating to the property or

---

[5] As evidenced by the motions for summary judgment in the Buffalo litigation, CSIRO can prove infringement using the RTL code for the accused products. Knowledge of Marvell patents or patent applications is irrelevant to this litigation.

transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless the existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Specifically, an intervention applicant under that rule must meet "four requirements: (1) the applicant must file a timely application; (2) the applicant must claim an interest in the subject matter of the action; (3) the applicant must show that disposition of the action may impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties to the litigation." United States v. Franklin Parish School Bd., 47 F.3d 755, 756 (5th Cir. 1995) (upholding denial of intervention).[6] The applicant bears the burden of demonstrating its right to intervene by satisfying all of the above requirements. Edwards v. City of Houston, 78 F.3d 983, 999 (5th Cir. 1996). Marvell fails to meet each of the four requirements.

### 1. Marvell's motion is not timely

"The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner." Sierra Club v. Espy, 18 F.3d 1202, 1205 (5th Cir. 1994). "[T]imeliness is to be determined from all the circumstances." Edwards, 78 F.3d at 1000 (citations omitted). To determine whether a motion to intervene is timely, the Court must consider not just the impact on the parties but the length of time the applicant knew or should have known of their interests in the case. Espy, 18 F.3d at 1205. "[T]he timeliness clock runs either from the time the applicant knew or reasonably should have known of his [stake in the case into which he seeks to intervene] or from the time he became aware that his [stake] would no longer be protected by the existing parties to the lawsuit." Doe v. Glickman, 256 F.3d 371, 376 (5th Cir. 2001), quoting Edwards, 78 F.3d at 1000.

---

[6] Intervention motions and other procedural matters not unique to patent law are governed by regional circuit law. Ericsson Inc. v. InterDigital Communications Corp., 418 F.3d 1217, 1220-21 (Fed. Cir. 2005).

Marvell's motion is untimely because it has known of its "interest" in this case since the initiation of the action on December 22, 2006. (Marvell seeks to intervene on the same grounds in the Microsoft case, initiated on May 9, 2005.) As discussed more fully below, Marvell's claimed "interest" is protecting against an infringement finding against plaintiffs' products that include Marvell components. Such an "interest" is insufficient foundation for intervention, but in any event Marvell has known of that "interest" since the initiation of the Buffalo case (in March 2005) and the Microsoft and Intel cases (in May 2005). As far back as June 2005, Marvell contacted CSIRO to inquire about the possibility of licensing the CSIRO technology at issue here.[7] (Colwell Decl. ¶¶ 6-7.)

Marvell does not dispute its knowledge, but argues instead that "[o]bviously, Marvell was not able to bring its motion to intervene to protect its interests until after the filing of the Marvell Action." (Mot. at 8.) That reasoning is baffling. Marvell's interest is not in its own case, but rather in its rights (if any) at stake here. There are none, and Marvell's filing of a separate suit does not create a separate right it may assert here as the basis for intervening.

Marvell also claims that its motion is now "especially pressing in light of the confidential, privileged information made available to Townsend during its representation of Marvell." (Mot. at 9.) That argument also makes no sense. Not only has Marvell known of Townsend's representation of CSIRO in the '069 patents since at least June 2005, but Marvell's retention of Townsend for patent prosecution work began *after* that date, in *late* 2005. Marvell's longtime conduct is at odds with its argument. (Colwell Decl. ¶¶ 6-7; Haughey Decl. ¶ 2; Tabibi Decl. ¶ 2.)

Finally, Marvell claims that its intervention motion should be considered timely because intervention will not prejudice the existing parties. That argument would hold together better if

---

[7] To the extent that Marvell's intervention motion is based on its purported indemnification obligation to one of its customers, Marvell has known of such obligations since it entered the first of said agreements on January 19, 2005, and the second on September 4, 2006. (Calladine Decl. Exhs. 2-3.)

7

Marvell were not seeking to intervene *for the very purpose of prejudicing the parties*, either by staying this litigation or by disqualifying plaintiffs' counsel.

### 2. *Marvell has no cognizable interest in this case*

An intervening party must demonstrate that it has a "direct, substantial [and] legally protectable" interest in the case. Glickman, 256 F.3d at 379, see also United States v. Perry County Board of Education, 567 F.2d 277, 279 (5th Cir. 1978) (describing the Fifth Circuit standard as prescribing "a somewhat narrow reading of the term 'interest.'"). As the Fifth Circuit has explained, "Not any interest ... is sufficient ... the interest [must] be one which the *substantive* law recognizes as belonging to or being owned by the applicant." Saldano v. Roach, 363 F.3d 545, 551 (5th Cir. 2004) (internal citations and marks omitted, emphasis and alteration in the original), citing Glickman, 256 F.3d at 379. Marvell has asserted no such interest, and thus its motion to intervene must be denied.

Marvell claims to have an "interest" in this case because its component parts are "at the heart of CSIRO's infringement claims" and because if CSIRO is successful, the plaintiffs' infringing products may be enjoined.[8] (Mot. at 10.) Marvell exaggerates the size of its interest—it manufactures components in only 66 of the 6,800-plus infringing end products at issue in the '069 cases, or less than one percent of the total. (Furniss Decl. ¶ 4.) To allow every manufacturer with such a *de minimus* "interest" in the outcome to intervene in the case would potentially bloat the parties to unmanageable numbers.

Marvell's shortcoming is not just quantitative, it is also qualitative. The law of this Circuit is absolutely clear: an economic interest in the outcome of a case is insufficient to confer standing to intervene. "We hold that an economic interest alone is insufficient, as a legally protectable interest is required for intervention under Rule 24(a)(2)." New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co., 732 F.2d 452, 466 (5th Cir. 1984), cert. denied, 469 U.S. 1019

---

[8] Marvell's motion papers suggest that CSIRO seeks to enjoin Marvell's component products, which is simply not the case.

(1984) ("NOPSI III"). Marvell's asserted interest is exactly the type of economic interest that is insufficient to sustain intervention. Marvell argues that this case may result in its customers' products being enjoined, which would impact Marvell because the market for its components would shrink. Marvell's own rights are not at stake here, only its *economic* interests, which alone are insufficient basis for intervention.

Construing an almost identical fact pattern, the court in Nikon Corp. v. ASM Lithography B.V., 222 F.R.D. 647 (N.D. Cal. 2004), denied the Rule 24(a) intervention motion of a component manufacturer seeking to intervene in a patent infringement suit against its customer, the manufacturer of end products containing the moving party's components. In that case Nikon, the holder of four patents on certain photolithographic and microlithographic machines used in the manufacture of integrated circuits, brought an infringement suit against defendants ASM Lithography B.V. and ASM Lithography, Inc. ("ASML"). Id. at 648. Carl Zeiss SMT AG, which manufactured the optical components of the allegedly infringing machines that were "a significant part of AMSL's accused designs," (id. at 648), attempted to intervene after "it became clear that Zeiss's products sit at the center of this multifarious litigation" (id. at 649–50). Zeiss, like Marvell, claimed that it was entitled to intervene because a negative outcome in the case would stifle the market for its products. Id. at 650–51. Unlike Marvell's situation, however, ASML was Zeiss's *only* customer for the technology in question, and Zeiss claimed that "as a practical matter, [the two] stand and fall together." Id. at 648.

The court agreed that Zeiss's interest in the case was significant—but not of the type that allows a party to intervene. "There is no question that Zeiss has substantial business and economic interests in this litigation; should ASML's microlithographic components be found unlawful, Zeiss's business would suffer a concomitant blow." Id. at 650. However, "'[a]n economic stake in the outcome of the litigation, even if significant, is not enough' to qualify as a protectable interest under Rule 24(a)." Id., quoting Green v. United States, 996 F.2d 973, 976

9

(9th Cir. 1993). Therefore, the court concluded, Zeiss's interest, no matter how substantial, was insufficient, so "Zeiss may not intervene under Rule 24(a)."[9]

The analysis should guide the Court's approach here. Marvell's asserted interest in this case lies in the negative economic impact on it should CSIRO prevail. It may be true that a potential economic impact on a very small subset of the end product manufacturers may wend its way back to Marvell (alternately, they may change the infringing design of their products or negotiate a license with CSIRO, further attenuating any harm to Marvell). Even so, Marvell's interest is purely economic and thus cannot sustain its motion to intervene. For example, in iWork Software, LLC v. Corporate Exp., Inc., 2003 WL 22494851 (N.D. Ill Nov. 4, 2003), webMethods, which supplied to the defendants software that formed the basis for the modified software directly at issue in the patent infringement suit, sought to intervene on the basis of its "intention to indemnify defendants pursuant to previous contractual obligations." Id. at *4. The court found that the indemnity agreements did not give webMethods a legally protectable interest, and denied intervention under both subsections (a) and (b) of Rule 24. Id. at *3, 4–5.

The NOPSI III case sets out the Fifth Circuit's approach. 732 F.2d 452. There, the *en banc* court considered the application of New Orleans city officials who were seeking to intervene in a contract dispute between the city's public utilities corporation and its gas provider. Id. at 461–63. The city officials asserted their interests were at stake because the defendant supplier's excessive rates were passed on to them as city consumers. Id. at 461–62. While not disputing that the outcome of the case would undoubtedly affect the utility rates paid by the

---

[9] The court did allow Zeiss to intervene under Rule 24(b). That determination, however, focused on Zeiss's declaratory judgment claim and its efforts to intervene as a full participant in the ongoing case. Zeiss's declaratory judgment claim (seeking a finding that its products did not infringe the plaintiffs' patents) was set out in a separate complaint in intervention. Here, Marvell does not seek to participate in this action, only to disrupt it. Marvell's declaratory judgment claims are set out in its entirely separate action, which Marvell would have the Court maintain while staying the action here. Curiously, Marvell does not seek to consolidate these cases or otherwise achieve any judicial economy by folding the issues there into this case. Rather, it simply wants a separate opportunity to relitigate issues already decided here.

attempted intervenors, the court held such a purely economic interest was insufficient to confer standing. "By requiring that the applicant's interest be not only 'direct' and 'substantial,' but also 'legally protectable,' it is plain that something more than an economic interest is necessary. What is required is that the interest be one which the *substantive* law recognizes as belonging to or being owned by the applicant." Id. at 464 (emphasis in the original). Here, Marvell does not assert its own independent substantive claims, but only argues that it should be allowed to participate because disposition of the existing claims will have some impact on it.[10] Marvell asserts only an economic interest, alone insufficient to intervene under Rule 24(a).

Courts applying the Fifth Circuit standard have repeatedly rejected intervention applications in circumstances analogous to those alleged by Marvell here, where the only interest asserted is an attenuated, contingent economic interest. For example, in Rigco, Inc. v. Rauscher Pierce Refsnes, Inc., 110 F.R.D. 180 (N.D. Tex. 1986), the court rejected the motion of a bankrupt company's shareholders to intervene in a suit involving large claims by a company against a third party, on the ground that the shareholders had an interest in securing additional assets for the company. "The possibility of a benefit because a party may have more money available at the conclusion of a lawsuit does not constitute a direct, substantial, legally protectable interest under Rule 24(a)(2)." Id. at 184. Similarly, the court in Lincoln General Ins. Co. v. Aisha's Learning Center, 2004 WL 2533575 (N.D. Tex. Nov. 9, 2004), refused to allow the victim in an accident caused by the defendant to intervene in the defendant's insurance coverage suit against its carrier. Id. at *2. Conceding that the moving party "has a financial interest in this case because a finding of no insurance coverage, together with a finding of liability against [defendant], could result in [movant] having obtained a judgment without a solvent defendant against which to collect," id., the court nevertheless denied intervention because the asserted interest was purely economic. This Court has also denied the intervention

---

[10] Quite the opposite, Marvell seeks to intervene to bring a stay so that it can assert its independent claims against CSIRO in a separate case.

motion of a tenant's guarantor who had already incurred liability to the landlord for damages to the premises, and sought to intervene in tenant's suit alleging that the damages were caused by defendant's negligence. Ouch v. Sharpless, 237 F.R.D. 163, 165 (E.D. Tex. 2006). It found that the intervening party's interest was entirely economic and could be protected in a separate suit. Id. at 166.

In a footnote, Marvell claims that one of its customers is a party in this case and has demanded indemnity from Marvell. (Mot. at 10.) The facts on this point are entirely vague and thoroughly unsupported. Marvell has not admitted that it owes anyone an indemnity, has not identified the customer, and has not described the terms of the indemnity. Such conclusory statements without any supporting facts are meaningless. Moreover, even if Marvell's interest is based on an indemnity obligation, its interest in the case remains purely economic, and therefore of the type that does not confer standing to intervene. If Marvell really thought its interests were at risk, it could accept the request for indemnity and take over that customer's defense.

Marvell's only other "interest" in the case is its purported interest in preventing the dissemination of confidential information it claims might help CSIRO in this case. As set out in the accompanying opposition to Marvell's motion to stay or disqualify, the subject matter of Townsend's prior representation of Marvell did not overlap with the facts and issues of this case, and Townsend simply never possessed Marvell's confidential information of any relevance here. (Haughey Decl. ¶¶ 2, 6-8; Tabibi Decl. ¶¶ 4-5; Steiner Decl. ¶¶ 4-5; Furniss Decl. ¶¶ 6-8; Colwell Decl. ¶¶ 6-10.) The absurdity of Marvell's contention is underscored by the fact that Marvell claims it conveyed that confidential information to Townsend in late 2005 and 2006—after Marvell knew that Townsend was representing CSIRO in the Buffalo, Microsoft and Intel cases, and after Marvell had signed its "indemnity" agreements. (Colwell Decl. ¶¶ 6, 9;

Calladine Decl. Exhs. 2-3.) If Marvell sincerely believed it had confidential information relevant to this case, it certainly would not have given it to Townsend in late 2006.[11]

Marvell has no interest that allows it to intervene in this case.

### 3. *Marvell's interests would not be impaired by denying intervention*

An intervenor must also show that disposition of this case would impair its ability to protect its interest. The "interests" Marvell claims would be impaired are its purely economic interests in the outcome of the case, and thus not legally cognizable interests for purposes of intervention, or illusory "confidential information" that its own conduct demonstrates was never conveyed to CSIRO's counsel in this matter. It is circular logic indeed to claim impairment of "interests" that do not exist. Marvell also suggests that it is at risk from the *stare decisis* effect of decisions reached here, but fails to point to any decision that might have such an effect. In any event, the limited stay Marvell seeks would not prevent this case from proceeding and precedential decisions from being reached before the issues are addressed in Marvell's separate case. Marvell also claims that its products are at risk of being enjoined, which is simply not true and mischaracterizes the relief sought here. Marvell's interests, to the extent they exist, are not at risk here.

### 4. *Marvell's interests are adequately protected by the existing parties*

Finally, a non-party cannot intervene if the current parties to the litigation are able adequately to protect its interests. Marvell asserts that the end product manufacturers here cannot protect Marvell's interests because "they did not manufacture the underlying Marvell mobile transceivers, nor do they have knowledge of the inner workings of such transceivers," that Marvell claims, "Marvell alone possesses ... ." (Mot. at 11.) As this Court is aware from presiding over the <u>Buffalo</u> case, the presence of a component manufacturer as a party in the case is entirely unnecessary to the litigation of the '069 patent. (Colwell Decl. ¶¶ 6, 9; Furniss Decl. ¶

---

[11] Townsend, of course, could not have known of any potential "conflict" because Marvell never told it about the indemnity agreements. (Gilliland Decl. ¶ 6; Haughey Decl. ¶ 9; Tabibi Decl. ¶ 6; Steiner Decl. ¶¶ 11-12.)

13

8.) Marvell provides no explanation for why plaintiffs, all sophisticated manufacturers represented by highly competent patent counsel, will be unable to comprehend Marvell's technology and explain it to the Court. The critical issue here is whether the end products practice the 802.11a/g/n standard and thus infringe the '069 patent; any additional features of Marvell's component parts are simply irrelevant to the litigation. (Furniss Decl. ¶¶ 7-9.) Compliance with the standard is conclusively demonstrated by the RTL code, which the Court has already ordered the parties to obtain from their component chip makers. To the extent additional "in depth knowledge" becomes relevant, that evidence may be obtained in third party discovery.[12]

Because it fails to meet any of the four requirements for intervention under Rule 24(a), Marvell's motion to intervene on that basis should be denied.

### B.  MARVELL SHOULD NOT BE ALLOWED TO INTERVENE UNDER RULE 24(B)

Marvell also claims that it should be permitted to intervene under Federal Rule of Civil Procedure 24(b)(2). The Fifth Circuit has stated, "Th[at] intervention rule is intended to *prevent multiple lawsuits* where common questions of law or fact are involved but is not intended to allow the creation of whole new lawsuits by the intervenors." Deus v. Allstate Ins. Co., 15 F.3d 506, 525 (5th Cir. 1994), citing Washington Elec. Coop v. Massachusetts Mun. Wholesale Elec. Co., 922 F.2d 92 (2d Cir. 1990) (emphasis added). That is quite the opposite of what Marvell is attempting here, where it seeks to disrupt this lawsuit so that it can litigate some claims separately. This is not an intervention motion by a party seeking to bring similar or related claims in the same case by bringing a complaint in intervention, c.f., Reid v. General Motors Corp., 240 F.R.D. 257 (E.D. Tex. 2006), but an attempt to multiply litigation and increase the burden on an opposing party to gain leverage. The rule was not intended to allow such manipulative disruption of ongoing litigation.

---

[12]  Marvell's brief could be construed as arguing that Marvell is entitled to intervene because it is subject to third party discovery. That is obviously wrong.

Marvell's inversion of the fundamental intent of the rule renders some of its arguments nonsensical. For example, Marvell argues that allowing intervention will not delay this case, but the relief it seeks is a stay (that is, a delay). Marvell argues that excluding some devices from this suit will reduce the discovery in this case—though that means discovery related to those devices will have to be taken in its separate case. Other, general discovery will have to be repeated in the separate action.

Because there is no efficiency or other benefit to be gained from allowing Marvell to intervene for the limited purpose it seeks, it should be denied intervention under Rule 24(b).

## IV. CONCLUSION

Marvell's motion to intervene is nothing more than a ploy to disrupt the orderly litigation of this case. For the reasons set forth above, its motion should be denied.

This pleading is signed and filed with permission of lead counsel.

DATED: August 3, 2007          **KERR & WAGSTAFFE LLP**

By /s/ James M. Wagstaffe
JAMES M. WAGSTAFFE (CA BAR NO. 95535)
KEITH K. FONG (CA BAR NO. 148067)
MICHAEL NG (CA BAR NO. 237915)
**KERR & WAGSTAFFE LLP**
100 Spear Street, Suite 1800
San Francisco, CA 94105
(415) 371-8500 Telephone
(415) 371-0500 Facsimile
email: wagstaffe@kerrwagstaffe.com
email: fong@kerrwagstaffe.com
email: mng@kerrwagstaffe.com
Attorneys for Plaintiff
COMMONWEALTH SCIENTIFIC AND
INDUSTRIAL RESEARCH ORGANISATION

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this motion was served on all counsel who are deemed to have consented to electronic service. Local Rule CV -5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this the 3rd day of August, 2007.

DATED: August 3, 2007    **KERR & WAGSTAFFE LLP**

By /s/ Michael Ng with Permission of Lead Attorney
JAMES M. WAGSTAFFE (CA BAR NO. 95535)
KEITH K. FONG (CA BAR NO. 148067)
MICHAEL NG (CA BAR NO. 237915)