# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF TEXAS

### TYLER DIVISION

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington corporation, HEWLETT-PACKARD COMPANY, a Delaware corporation, NETGEAR, INC., a Delaware corporation,<br><br>    Plaintiffs,<br><br>  v.<br><br>COMMONWEALTH SCIENTIFIC AND INDUSTRIAL RESEARCH ORGANISATION,<br><br>    Defendant. | Case No. 6:06 CV 00549 LED |
| COMMONWEALTH SCIENTIFIC AND INDUSTRIAL RESEARCH ORGANISATION,<br><br>    Counterclaimant,<br><br>  v.<br><br>MICROSOFT CORPORATION, a Washington corporation, HEWLETT-PACKARD COMPANY, a Delaware corporation, NETGEAR, INC., a Delaware corporation,<br><br>    Counterdefendants. | |

**CSIRO'S SURREPLY IN OPPOSITION TO MARVELL'S MOTION
TO STAY PROCEEDINGS AND, IN THE ALTERNATIVE,
DISQUALIFY DEFENDANT'S COUNSEL**

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................ 1

II.    ARGUMENT ............................................................................................... 2

      B.    MARVELL'S REQUEST FOR A STAY MUST BE DENIED ............................6

           1.    Marvell's parts are not at the "heart of" these claims................................6

           2.    A stay would burden both CSIRO and the Court with additional and needless litigation.................................................6

           3.    A stay would subvert the purpose of the customer suit exception ........................................................................7

      C.    MARVELL'S REQUEST FOR DISQUALIFICATION MUST ALSO BE DENIED ...................................................................................10

           1.    Marvell's conduct demonstrates that there was never any direct adversity between Marvell and CSIRO ..........................................10

           2.    Any conflict arising from Marvell's indemnity agreements was thrust upon Townsend and thus not a basis for disqualifying the firm....................................................11

           3.    Marvell has failed to support its disqualification  motion with any facts .................................................................12

           4.    Even the "limited" disqualification Marvell seeks would be prejudicial and burdensome to CSIRO ........................................14

           5.    Marvell's last-ditch allegations concerning attorneys who do not work on this litigation provide no basis for disqualification.....................................................15

III.    CONCLUSION........................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

AMBAC Indemnity Corp. v. Bankers Trust Co.,
    546 N.Y.S. 2d 265 (1989) ................................................................................................ 10

American Sterilizer Co. v. Surgikos, Inc.,
    24 U.S.P.Q.2d 1547, 1992 WL 332102 (N.D. Tex. 1992) ........................................... 5

Biax Corp. v. Fujitsu Computer Systems Corp.,
    2007 WL 1466638 (E.D. Tex. May 16, 2007)............................................................... 13

Carnegie Mellon Univ. v. Hoffman-La Roche, Inc.,
    C95-3524 SI (N.D. Cal. June 27, 2000)......................................................................... 15

Cox v. American Cast Iron Pipe Co.,
    847 F.2d 725 (11th Cir. 1988) ........................................................................................ 5

Florida Insurance Guaranty Association, Inc. v. Carey Canada, Inc.,
    749 F. Supp. 255 (S.D. Fla. 1990) ................................................................................. 11

Friskit, Inc. v. RealNetworks, Inc.,
    2007 WL 1994203 (N.D.Cal. June 5, 2007) ................................................................. 15

Gilbert v. Knoxville Int. Energy Exposition,
    547 F. Supp. 53 (E.D. Tenn. 1982) ............................................................................... 10

Hertz Corp. v. Caulfield,
    1992 WL 53610 (E.D. La. March 10, 1992) .................................................................. 5

In re American Airlines,
    972 F.2d 605 (5th Cir. 1992) .......................................................................................... 12

Jasmine Networks, Inc. v. Marvell Semiconductor, Inc.,
    12 Cal. Rptr. 3d 123 (2004) ............................................................................................ 3

Shire Labs. Inc. v. Nostrum Pharmaceuticals, Inc.,
    2006 WL 2129482 (D.N.J. 2006) .................................................................................. 10

## I.      INTRODUCTION

For more than two years, Marvell—which claims its component parts are "at the heart of CSIRO's claims"—has knowingly remained on the sidelines while many of the world's largest computer hardware companies have litigated the '069 patent before this Court.  Now, at the eleventh hour, Marvell seeks to disrupt that litigation by asking the Court to: (1) carve out from the ongoing cases the end products that happen to include Marvell component parts, (2) partially stay those cases in favor of Marvell's recently filed declaratory judgment action, and then (3) address those stayed claims only after the conclusion of Marvell's case.  Marvell's justification for that illogical arrangement is the "customer suit exception," an inapposite rule intended to streamline and consolidate litigation, not to fragment it.  As this Court is well aware from its years of addressing the technical issues in the '069 patent litigation, Marvell's factual claims about the significance of its knowledge are hugely overblown.  Nothing in Marvell's reply brief rescues its request from the simple fact that a stay would undermine the Court's efficient management of these cases.

In the alternative, Marvell seeks to disqualify CSIRO's counsel from any case in which Marvell or its customers is a party.  Marvell has done nothing to demonstrate that such dramatic relief is warranted.  Not only is Marvell wrong on the law, it has presented to the Court no factual basis on which the Court might engage in the "painstaking analysis" disqualification requires.  Marvell's conclusory factual allegations belie its insistence that an underlying conflict exists, as does Marvell's own conduct over the past two years.  Though Marvell had full knowledge of all of the "facts" it now says give rise to a "conflict," it decided to engage Townsend to perform patent prosecution work on its behalf.  Marvell's reply brief does nothing to explain that conduct.  Instead, Marvell merely counts up the paragraphs in its superficial supporting declaration, as if repetitious volume could substitute for substance.  Marvell has not

even provided to the Court the patent applications it says contain relevant confidential information disclosed to Townsend, and has misused the Court's protective order to thwart CSIRO's efforts to undertake its own analysis.

That is not the conduct of a truly aggrieved party, but of one which hopes to gain tactical advantage from a manufactured "conflict."  Marvell's motion should be denied in its entirety.

## II.     ARGUMENT

### A.     MARVELL'S MOTION IS UNTIMELY, AND ITS EXCUSES FOR ITS DELAY THOROUGHLY UNDERMINE THE SUBSTANTIVE MERITS OF ITS REQUEST FOR RELIEF

Marvell claims that it is entitled to stay this action because its component parts supposedly are "at the heart of CSIRO's claim" (Reply at 1, 2 and 3) and "[a]ny adjudication here will directly impact Marvell's substantive rights," putting it "at risk of direct, significant financial loss ... ."  (Id. at 9.)[1]  With these fanciful assertions in hand, Marvell trumpets that it is "the proper party to defend against CSIRO's claims" because amazingly neither the Microsoft plaintiffs nor the Toshiba defendants possess the relevant "information, documents or witnesses" necessary to adjudicate the patent infringement at issue.  (Id. at 3.)

Marvell's arguments for why its motion is timely are directly at odds with its newly minted "interest" in this case.  Though the Microsoft case was filed in 2005, and though Marvell signed the indemnity agreement in question more than two-and-a-half years ago, Marvell now curiously says that its request for a stay is timely because it did not learn of its "interests" in the '069 litigation until late 2006 and early 2007, when its customers purportedly tendered indemnity claims.  (Id. at 6–7.)  Marvell cannot have it both ways.  If Marvell's interest were really so vital

---

[1]     As will be shown below (Sec. II.B.1., infra), the predicate for Marvell's delayed insurgence into this pending litigation, i.e., that its chip somehow is "the key operative part in the end products to which CSIRO objects" (Reply at 9), is absolutely false.

because its components are "at the heart of CSIRO's claims" or because it has an indemnity agreement with one of the Microsoft plaintiffs, then it could have and should have filed this motion at the outset of this case more than two years ago.

It is preposterous for Marvell to claim that it did not "learn" of those "interests" until its customer sought reimbursement under the indemnity agreement.  Marvell and "Customer A" signed the indemnity agreement in January 2005, four months prior to the filing of the Microsoft suit.  It is clear that during the intervening months the two discussed Marvell's potential obligations to Customer A with respect to CSIRO's '069 patent enforcement efforts, because only a few days before Customer A filed the Microsoft suit, the two entered into a forbearance agreement concerning potential indemnity for those very claims.  In fact, Marvell has characterized the forbearance agreement as reflecting "Customer A's decision to resolve the issue on its own through its declaratory judgment action." (Supplemental Declaration of Guy Calladine "Supl. Calladine Decl."), Ex. A.)  Marvell's longstanding participation in the strategic planning over that litigation is further evidenced by its participation in a so-called "Joint Defense Group," along with Microsoft, Broadcom, Hewlett Packard, Netgear, Dell and Apple—all plaintiffs in the Microsoft or Intel suits.  (Id., Ex. B.)  A privilege log recently produced by Intel Corporation in connection with Marvell's California state court suit against Townsend shows that Marvell participated in that group from at least December 2004 through May 2005. [2]  Now,

_____

[2]     Tellingly, Marvell did not disclose any participation in the "Joint Defense Group" or any early role in the strategic planning of the Microsoft and Intel cases.  This apparent lack of candor is relevant because it would directly contradict Marvell's claim to be unaware of the implications of that litigation until late 2006.  Marvell's candor is, of course, significant because it asks the Court to accept conclusory allegations set forth in the declaration of its Acting General Counsel, Eric Janofsky.  It may be worthy of note that Marvell's credibility and that of its Acting General Counsel played an equally relevant role before other courts.  Jasmine Networks, Inc. v. Marvell Semiconductor, Inc., 12 Cal. Rptr. 3d 123 (2004) (review pending).

several years later, Marvell would have the Court allow it to revisit the strategic decision to let others carry the water at the outset of the Microsoft case.[3]

It is also nonsensical to argue that Marvell's customer is somehow prejudiced by being "forced" to litigate a case that the customer filed on its own accord.  Marvell's new declaratory judgment action does not change matters.  Marvell could have sought to join the Microsoft action or filed its own separate suit long ago, but did not.  Setting aside the lack of any substantive merit to its motion, Marvell has simply waited too long to seek a stay here.[4]

Marvell's excuses for its lack of timeliness are also directly at odds with its alternative request for disqualification.  Marvell claims that "[n]o conflict arose" until after the indemnification demand when "Marvell determined the claim was not frivolous in December 2006 and decided to proceed on behalf of Customer A."  (Reply at 15.)  Marvell, of course, knew about its indemnity agreements for years, though kept them hidden from Townsend until March 2007, only days before Marvell ended its attorney-client relationship with the firm by filing suit against it.  (Id. at 15.)  The entire time, Marvell knew that Townsend represented CSIRO in the '069 patent enforcement matters.  For example, Marvell does not dispute that in June 2005, it had its outside counsel call Townsend to inquire about licensing the '069 technology from CSIRO.

If Marvell truly believed that its indemnity agreements with its customers gave rise to a conflict of interest, the time to disclose them was in May 2005, before CSIRO invested two-

---

[3]     Marvell also does not dispute that in June 2005, its outside counsel began making inquiries to Townsend concerning the possibility of licensing CSIRO's technology.

[4]     Marvell's inaction in the Microsoft case also demonstrates the complete lack of merit to its request to stay the Toshiba action.  By sitting on the sidelines of the Microsoft action for more than two years, Marvell long ago acknowledged that there was no compelling need to supplant litigation with its customers in favor of its own separate lawsuit.

years' time, effort and costs in its attorney-client relationship with Townsend.  "Waiver of a motion for disqualification of counsel is proper where the delay in moving for disqualification is for an extended period of time … ."  Abney v. Wal-Mart, 984 F. Supp. 526, 530 (E.D. Tex. 1997) (Schell, J.).  The prejudice to CSIRO—deprivation of its counsel of choice who has engaged in substantial preparations for the case—is exactly the harm the rule is intended to avoid.  "A motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion.  A litigant may not delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of a case has been completed."  Hertz Corp. v. Caulfield, 1992 WL 53610, *3 (E.D. La. March 10, 1992) (quoting Cox v. American Cast Iron Pipe Co., 847 F.2d 725, 729 (11th Cir. 1988)).  The delay precludes disqualification.

Marvell cannot seriously allege that CSIRO's filing of mandatory counterclaims changed the nature of the conflict analysis.  It was Customer A that put to issue the question of whether its products infringed the '069 patent, and, thus, it was entirely predictable that CSIRO would file its mandatory counterclaims when required to do so.  Yet Marvell chose not to raise any conflict allegations or reveal the existence of the indemnity agreement for two years.  The waiver doctrine prohibits the misuse of conflict rules as a springing conflict trap.  "Waiver is particularly relevant when a motion to disqualify is used in an abusive manner as part of litigation tactics."  American Sterilizer Co. v. Surgikos, Inc., 24 U.S.P.Q.2d 1547, 1551, 1992 WL 332102 (N.D. Tex. 1992).  Because Marvell failed to raise the "conflict" issue two years ago, it cannot do so now.

**B.      MARVELL'S REQUEST FOR A STAY MUST BE DENIED**

### 1.      *Marvell's parts are not at the "heart of" these claims*

Marvell also grossly exaggerates its role in this litigation, in a number of ways.   First, it is simply untrue that its component parts are "at the heart of CSIRO's claims," which address the infringing nature of the *end products* at issue here.   The types of component chips in those devices, a very small percentage of which are made by Marvell, have largely become interchangeable commodities.   They are manufactured according to the end product manufacturer's needs and specifications, not the other way around.   Second, as this Court is quite aware, the specific functionality of those component chips is of limited significance.   Either an end product does or does not practice the 802.11a/g/n standards—whatever additional features one of its component chips might add to the standard are entirely irrelevant.   Third, whatever relevant information Marvell does have (namely, its RTL code), it would be required to disclose in discovery (and the Court has already directed the end product manufacturers to obtain the RTL code from their component suppliers).   There is no authority that allows a third party to stay a pending action simply because it would be subject to discovery.   If Marvell were sincere in its assertion that it has an independent interest in explaining to the Court the relevant information in its possession, one would expect Marvell to have sought leave to intervene for the purpose of litigating fully alongside its customers here, not to stay their suit so it can bring an entirely separate action.

### 2.      *A stay would burden both CSIRO and the Court with additional and needless litigation*

Marvell makes the unsupported and rather fantastic allegation that "[a] partial stay of the proceedings will not prejudice CSIRO."  (Reply at 7.)  Marvell's specious reasoning (set out in a footnote) appears to be that because its components are found in fewer than one percent of the

end products at issue in these cases, carving those products out into a separate suit would not be disruptive. However, the burden lies in the redundant litigation of claims, not in the size of the fragmented litigation. If the Court grants Marvell's request for a stay, some (but not all) of the end products made by some (but not all) of the Microsoft plaintiffs and Toshiba defendants would be stayed, while the remainder would stay as part of the preexisting litigation. Marvell would separately and uneconomically litigate its declaratory judgment action, and at the conclusion of that litigation (no matter what the result) the stayed sections of the Microsoft and Toshiba cases would be addressed—potentially long after the other claims have been resolved. In other words, Marvell's proposed "solution" would force CSIRO and this Court to engage in an entirely unnecessary, wholly redundant, and needlessly circuitous litigation.

### 3.  *A stay would subvert the purpose of the customer suit exception*

The purpose of the "customer suit exception" is to *avoid* such redundancy and inefficiency. It applies in situations where the patent holder has sued parties with derivative and secondary interests in the infringement rather than the manufacturers with whom its genuine dispute lies. It would be entirely illogical to apply the exception to situations like the Microsoft case here, in which the alleged "customers" affirmatively sued the patent holder. If Marvell really thought that its interests were primary, and sincerely intended to help its customers avoid litigation, again it would have sought to intervene years ago.

As this Court is perfectly aware from the Buffalo litigation, '069 infringement claims against the end product manufacturers can be resolved without making component makers parties to the litigation. Taking discovery from those third parties does not render the cases unmanageable. The experience of this Court's oversight of the '069 patent litigation so far

effectively demonstrates that future litigation will not devolve into the "complex jumble" Marvell so pessimistically predicts.  (Reply at 7.)

As demonstrated by the cases cited in CSIRO's opposition, courts consistently refuse to apply the customer suit exception in cases like these where the requested stay would disrupt orderly litigation and create inefficiency.  Marvell largely ignores those cases.  To take advantage of the customer suit exception, Marvell must establish that it would be "demonstrably more efficient" to stay the ongoing first-filed cases, and to do so must show that "the second action would resolve *all* charges against the customers in the stayed suit, including liability for damages."  Kahn v. General Motors Corp., 889 F.2d 1078, 1463 (Fed. Cir. 1998).  Marvell has not and cannot do so.  Even if Marvell's request for a stay were granted, its customers would remain active litigants in the present actions because almost all of their products do not use Marvell components.  Only a small sliver of the products at issue would be carved out and stayed pending resolution of the Marvell declaratory judgment action.  Even at the conclusion of that case, the stayed portion of these cases would have to be reopened to address issues, including direct infringement by the end product as a whole and damages, that cannot possibly be resolved in Marvell's separate case.  There is therefore no efficiency to be gained from a stay and no basis for applying the customer suit exception.

Rather than addressing Kahn's fundamental holding, Marvell snipes at irrelevant side issues.  It claims, for example, that Kahn should be distinguished because there the parties agreed that the components did not by themselves infringe on the plaintiff's patent.  (Reply at 4.)  But here CSIRO concedes the same thing—to the best of CSIRO's knowledge, Marvell's chips do not directly infringe the '069 patent.  Marvell also points to the presence of other tort claims in Kahn, a distinction with no difference whatsoever to the fundamental holding in that case.

8

(Reply at 4.)  Finally, Marvell claims that Kahn, along with Air Products & Chemicals, Inc. v. MG Nitrogen Serices, Inc., 133 F. Supp. 2d 354 (D. Del. 2001), are inapposite because the stay in those cases would have required a change of forum.  (Reply at 4.)  However, Marvell conveniently would have the Court ignore the long history of the '069 cases and the effort CSIRO was forced to undergo to bring all the declaratory judgment actions filed by Marvell's customer and others to this Court, their proper forum.  Marvell simply ignores the other cases cited by CSIRO.

Marvell now relies instead on Honeywell International Inc. v. Audiovox Commc'ns Corp., 2005 WL 2465898 (D. Del. May 18, 2005), a case involving wholly different facts from the instant actions.   The core dispute in Honeywell was between the plaintiff (holder of a patent on LCD displays) and the absent manufacturers of component LCD displays, whom Honeywell admittedly omitted only because of complications arising out of a related case before the same court.  Id. at 3.   In other words, the defendants infringed if and only if their component supplier infringed.  In contrast here, the core dispute is between CSIRO and the end product manufacturers, not Marvell.  As the Buffalo case conclusively demonstrates, an end product manufacturer can be found to infringe without addressing whether a component chip does as well.  Moreover, the Honeywell court was asked to allow the manufacturers to intervene and consolidate the various actions—effectively, to treat the cases together—not to splinter ongoing litigation in the cumbersome and duplicative manner Marvell seeks here.   Marvell says Honeywell "applies with full force" here because Marvell is "best positioned to provide the RTL code." (Reply at 5.)   It may be that Marvell has access to the RTL code, but it can and should easily provide that code in third party discovery.   The Honeywell court's reasoning simply cannot be applied here.

Because a stay would disrupt the ongoing litigation—including cases brought by Marvell's customers—there is no justification for granting Marvell's request.

**C.     MARVELL'S REQUEST FOR DISQUALIFICATION MUST ALSO BE DENIED**

### 1.   *Marvell's conduct demonstrates that there was never any direct adversity between Marvell and CSIRO*

There is no reason to disqualify Townsend, CSIRO's longtime counsel in the '069 matters, from continuing to represent its client in all of the ongoing litigation.  A disqualifying conflict requires that two clients be directly adverse, and (at least until Marvell unilaterally decided to sue CSIRO) the two were never directly adverse.[5]  An indirect economic interest in the outcome of a case is simply not enough to create the type of direct adversity that creates a disqualifying conflict of interest.  Model Rule 1.7(a) comment 6, see American Bar Association Formal Opinion 95-390; Shire Labs. Inc. v. Nostrum Pharms., Inc., 2006 WL 2129482 at *5 (D.N.J. 2006); Gilbert v. Knoxville Int. Energy Exposition, 547 F. Supp. 53, 54 (E.D. Tenn. 1982); AMBAC Indem. Corp. v. Bankers Trust Co., 546 N.Y.S. 2d 265, 272-73 (1989).

Marvell has provided no explanation for why it engaged Townsend when the chip maker had full knowledge of the facts it now says give rise to a "conflict."  To the contrary, its actions indicate that Marvell acknowledged that Townsend had no conflict of interest, and has only changed its tune now that it sees a strategic advantage in seeking disqualification.  It is undisputed that Marvell knew that Townsend represented CSIRO, since at least June 2005.  It is undisputed that Marvell knew of its indemnity agreements since January 2005, and that it

---

[5]      Marvell did not file its declaratory judgment action until after its attorney-client relationship with Townsend ended.  Moreover, for the past two years CSIRO's outside counsel has repeatedly assured Marvell's counsel that CSIRO has no intention of suing Marvell and that to the best of CSIRO's understanding, Marvell did not directly infringe the '069 patent.

specifically agreed with Customer A to forbear on those agreements so that Customer A could pursue its affirmative litigation against CSIRO in May 2005.  Nevertheless, later in 2005 Marvell's sophisticated and conflict-averse in-house counsel decided to send to Townsend the patent work Marvell now claims overlaps with the '069 patent litigation.  That conduct is at odds with its allegations.

### 2. *Any conflict arising from Marvell's indemnity agreements was thrust upon Townsend and thus not a basis for disqualifying the firm*

Marvell does not dispute that it never disclosed even the existence of its indemnity agreements to Townsend until March 13, 2007, a mere week before it filed suit against Townsend.  (Reply at 15.)  Instead, it makes the ludicrous assertion that Townsend should have *guessed* that Marvell had indemnity obligations to its customers.  Those indemnity agreements do not give rise to direct adversity, but even if they did, Townsend had no way of knowing that they existed.  If a client fails to disclose to the attorney relevant facts giving rise to a conflict, it cannot later assert those facts to disqualify the attorney.  See, e.g., Board of Regents of the Univ. of Nebraska v. BASF Corp., 2006 WL 2385363 (D. Neb. 2006); Klein v. Churchill Coal Corp., 612 F. Supp. 247 (S.D.N.Y. 1985) (denying disqualification motion where the client was "aware of a possible conflict of interest between himself and the present plaintiffs, [and] deliberately concealed from [the attorney] facts giving rise to that conflict … .").  There is simply no authority for Marvell's rather fantastic notion that Townsend was under an affirmative obligation somehow to force Marvell to disclose to Townsend all of Marvell's unrelated confidential business arrangements prior to taking on any work from the company.

To the extent any conflict arises out of Marvell's undisclosed indemnity agreements, it falls squarely under the "thrust upon" rule, which allows a law firm to withdraw from representation of a current client when an unforeseen conflict arises through no fault of counsel.

See, e.g., American Bar Association Model Rule 1.7, comment 5; Florida Ins. Guar. Ass'n, Inc.

v. Carey Canada, Inc., 749 F. Supp. 255, 261 (S.D. Fla. 1990).  Marvell does not address the

"thrust upon" rule at all, except to argue that it did not scheme to create the conflict.  Be that as it

may, there is no question that Marvell withheld the existence of the indemnity agreements from

Townsend during the entire time the firm performed work for Marvell.  Marvell cannot be

permitted to hold relevant facts in reserve, only to assert them after the fact when it is sees a

tactical advantage in alleging a conflict of interest.

### 3.  Marvell has failed to support its disqualification motion with any facts

Even if there were any merit to Marvell's disqualification claims, it has failed to present

any facts sufficient for the Court to grant the extraordinary relief it seeks.  This Circuit requires a

movant to provide detailed facts on which the Court can engage in the "painstaking analysis"

necessary to support disqualification:

> [A] substantial relationship may be found only after the moving
> party delineates with specificity the subject matters, issues and
> causes of action common to prior and current representations and
> the court engages in a painstaking analysis of the facts and precise
> application of precedent.

In re American Airlines, 972 F.2d 605, 614 (5th Cir. 1992).  Though Marvell has access to all of

facts it claims are relevant, it has not presented those facts to the Court.  Specifically, Marvell

has failed to describe in anything but the most general, conclusory terms how any work by

Townsend was "substantially related" to the current matter, and has failed to specify any relevant

confidential information it claims Townsend possesses.  Even when CSIRO's opposition pointed

out those deficiencies, Marvell declined to supplement the single superficial declaration

submitted in support of its motion, and instead merely recited the number of allegedly pertinent

paragraphs that declaration contains.  None of those paragraphs provide any of the substantive detail called for by this Circuit's precedents.

Marvell's excuse for not providing the information is that it is confidential, and it should not be forced to re-disclose it.  That does not relieve Marvell of its burden of proving the existence of a conflict.  This Court has well-established procedures and orders for presenting that information to opposing counsel and the Court without risk that it will be disclosed to the client—Marvell has simply chosen not to take advantage of them.  This Court simply cannot grant disqualification on the meager record submitted by Marvell.[6]

Most notably, Marvell has not provided to the Court any of the nine patent applications through which it says Townsend learned relevant information.  When CSIRO's outside counsel attempted to obtain those applications from Marvell to engage in their own analysis and demonstrate the lack of overlap with the current litigation, Marvell thwarted the effort by delaying production and manipulating the Court's protective order to prevent an outside expert from examining them.[7]  The burden is on Marvell, however, to prove the existence of a

---

[6]    Marvell's reliance on Biax Corp. v. Fujitsu Computer Sys. Corp., 2007 WL 1466638 at *1 (E.D. Tex. May 16, 2007) is strange.  In that case, this Court found that the moving party *failed* to provide sufficient detail to warrant disqualification.  However Marvell's declaration compares to those submitted in Biax, and falls well short of the detail mandated in this Circuit.

[7]    Specifically, CSIRO requested the applications immediately upon Marvell's filing of this motion, Marvell failed to provide them until *after* CSIRO filed its opposition brief, and only on the condition that they not be shared with Townsend.  (Supplemental Declaration of James Wagstaffe ("Supl. Wagstaffe Decl.") ¶ 2, Ex. A.)  Because CSIRO's other outside counsel do not have the in-house resources to analyze the patent applications, they arranged for an expert to review those applications, and disclosed that expert to Marvell pursuant to the terms of this Court's protective order.  (Id., Ex. B.)  After waiting the entire seven days permitted by the protective order, Marvell objected to the expert on entirely unsupported grounds, and attempted to impose additional restrictions going well beyond those set out by this Court.  (Id., Ex. C.) Specifically, Marvell demanded that the expert refrain from any consulting work in the 802.11a/g/n area for *three additional years*.  (Id.)  The demand is unreasonable and unwarranted, inter alia because patent applications become public after eighteen months.  (Id., Ex. D.)  (The

disqualifying conflict.  Because it has failed to provide the Court with any factual basis on which to disqualify CSIRO's counsel, its motion must be denied.

### 4. Even the "limited" disqualification Marvell seeks would be prejudicial and burdensome to CSIRO

Though Marvell appears to have limited its disqualification motion to the Marvell suit and claims involving its customers (Reply at 12), even that "limited" disqualification would place a heavy burden on CSIRO, an entirely innocent party.  CSIRO would be forced to obtain new counsel to defend against Marvell's suit and the claims involving its customers.  Even if those claims involve only a small percentage of the overall products at issue, the new firm would be forced to learn *all* of the background facts and legal issues relevant to general matters like claim construction.

Marvell's glib suggestion that CSIRO is not prejudiced because six attorneys already have appeared on its behalf in the <u>Marvell</u> matter is facile and misplaced.  CSIRO is currently represented by two firms who do not have the capacity or specialization necessary to represent CSIRO on their own with regard to the technical '069 patent issues.  In any event, *CSIRO*—not Marvell—has the right to determine which attorneys with the necessary resources and intellectual property expertise will represent it against Marvell's allegations.  Significantly, Marvell presents no facts to dispute the proven points that it will take upwards of six months to find replacement counsel and at the cost of several million dollars.

---

expert, predictably, declined to accept the additional restrictions.  (<u>Id.</u> ¶ 6.))  As late as the Friday before this brief was due, Marvell maintained its objection.  (<u>Id.</u>, Ex. E.)  It relented only *after* the expert was no longer available to conduct such analysis before this filing.  (<u>Id.</u> ¶ 8, Ex. F.)  The delayed withdrawal of the additional conditions demonstrate that they had no merit from the outset, and suggest that Marvell imposed them only to frustrate CSIRO's expert review.  Though CSIRO strongly disagrees with Marvell's tactical objection, the timing requirements of the protective order have effectively prevented CSIRO from obtaining any technical analysis of the key documents at issue.

### 5.  Marvell's last-ditch allegations concerning attorneys who do not work on this litigation provide no basis for disqualification

Finally, Marvell seeks to distract from the lack of substantive support for its disqualification motion by pointing to a side issue it did not even raise in its original motion papers.  CSIRO addressed the matter in its opposition and does so again here for the sake of a clear record.

Marvell claims that Townsend "exacerbated" the "conflict" by hiring three lawyers from McGuireWoods LLP who had performed work for Marvell at their prior firm.  Marvell's facts are wrong, and Townsend has gone out of its way to comply with all of its obligations with respect to those attorneys.  Two of the attorneys, Jonathan Link and Richard Meyer, worked on a few patent prosecution matters for Marvell that have no relation to the '069 patent litigation.  (Declaration of Ted Herhold ("Herhold Decl.") ¶ 3.)  Neither brought any Marvell work with them to Townsend, nor did they bring any hard copy or electronic records or files pertaining to Marvell.  (Id.)  Nevertheless, as a precautionary measure, Townsend has completely walled off these attorneys from all CSIRO matters. (Id.)  Specifically, these attorneys are physically separated from the CSIRO team, none of whom work in the Washington D.C. office; they have no access to the firm's files regarding the CSIRO litigation; and Townsend has instructed its other lawyers and staff to avoid any contact or discussion with these attorneys regarding the CSIRO matter.  (Id.)  Such arrangements have been widely accepted as sufficient protection against dissemination of confidential information. See, e.g., Friskit, Inc. v. RealNetworks, Inc., 2007 WL 1994203 (N.D. Cal. June 5, 2007); Carnegie Mellon Univ. v. Hoffman-La Roche, Inc., 2007 WL 902548 (N.D. Cal. June 27, 2000) (order denying motion for disqualification). Mindful that "[t]he rule of disqualification is not mechanically applied in this Circuit," Church of Scientology of California v. McLean, 615 F.2d 691, 693 (5th Cir. 1980), the Court should find

Townsend's precautionary steps more than adequate to protect Marvell's interests.  See also, Carbo Ceramics, Inc. v. Norton-Alcoa Proppants, 155 F.R.D. 158, 164 (N.D. Tex. 1994).

Townsend also extended an offer to Andrew Pratt to join the firm's Washington D.C. office as an associate.  (Herhold Decl. ¶ 4.)  However, after Townsend extended that offer and after he already had resigned from McGuireWoods, Mr. Pratt disclosed that he worked on a Marvell matter and participated in a conference call where CSIRO was discussed.  (Id.)  Upon learning of this issue (and after Marvell predictably refused to provide a protective waiver), Townsend did not go forward with hiring Mr. Pratt.  (Id.)  He instead works on a restricted basis as an independent contractor out of his home.  (Id.)  He does not have an office at Townsend and does not use a Townsend secretary.  (Id.)  He has no access to Townsend's files, computer network or telephone system.  (Id.)  He does not work or interact with any lawyers on the CSIRO team and has no access to any CSIRO files.  (Id.)  Mr. Pratt's assignments are on matters completely unrelated to Marvell or CSIRO.  (Id.)  Townsend employees have been instructed not to communicate with Mr. Pratt regarding his limited work for Marvell or any matters pertaining to CSIRO, and he has been instructed not to talk to anyone at Townsend about such work.  (Id.)  To the extent that Mr. Pratt's arrangement with Townsend might be deemed to create a conflict, Mr. Pratt has agreed to abide by the Court's or Townsend's directives on how to resolve that issue, even at risk of great personal and economic hardship to himself and his family.  (Declaration of Andrew Pratt ¶ 17.)

Townsend's hiring of Messrs. Link and Meyer and its independent contractor relationship with Mr. Pratt in no way support Marvell's request for disqualification.  Marvell's belated assertion of the supposed "issue" demonstrates the weakness of its disqualification motion and should be ignored entirely.

## III.    CONCLUSION

Despite a second opportunity to do so, Marvell has failed to assert any factual or legal basis for granting any of the relief it seeks.  Quite to the contrary, the more Marvell attempts to justify its eleventh-hour strategic maneuvering, the more it reveals the lack of any substantive merit to its demand.  Marvell's motion should be denied in its entirety.


This pleading is signed and filed with permission of lead counsel.


DATED:  August 31, 2007                    **KERR & WAGSTAFFE LLP**

                                           By /s/ James M. Wagstaffe
                                               JAMES M. WAGSTAFFE (CA BAR NO. 95535)
                                               KEITH K. FONG (CA BAR NO. 148067)
                                               MICHAEL NG (CA BAR NO. 237915)
                                               **KERR & WAGSTAFFE LLP**
                                               100 Spear Street, Suite 1800
                                               San Francisco, CA 94105
                                               (415) 371-8500 Telephone
                                               (415) 371-0500 Facsimile
                                               email: wagstaffe@kerrwagstaffe.com
                                               email: fong@kerrwagstaffe.com
                                               email: mng@kerrwagstaffe.com

                                               Attorneys for Plaintiff
                                               COMMONWEALTH SCIENTIFIC AND
                                               INDUSTRIAL RESEARCH ORGANISATION

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this motion was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV -5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this the 3rd day of August, 2007.

DATED:  August 31, 2007                    **KERR & WAGSTAFFE LLP**

By  /s/ Michael Ng with Permission of Lead Attorney
JAMES M. WAGSTAFFE (CA BAR NO. 95535)
KEITH K. FONG (CA BAR NO. 148067)
MICHAEL NG (CA BAR NO. 23791)