## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | |
|---|---|
| **MICROSOFT CORPORATION, a Washington Corporation, HEWLETT-PACKARD COMPANY, a Delaware Corporation, and NETGEAR, INC., a Delaware Corporation**, <br><br> *Plaintiffs,* <br><br> v. <br><br> **COMMONWEALTH SCIENTIFIC AND INDUSTRIAL RESEARCH ORGANISATION,** <br><br> *Defendant.* | **CIVIL ACTION NO. 6:06-cv-00549-LED** <br><br> **JURY TRIAL DEMANDED** |
| **COMMONWEALTH SCIENTIFIC AND INDUSTRIAL RESEARCH ORGANISATION,** <br><br> *Counter-claimant,* <br><br> v. <br><br> **MICROSOFT CORPORATION, a Washington Corporation, HEWLETT-PACKARD COMPANY, a Delaware Corporation, and NETGEAR, INC., a Delaware Corporation**, <br><br> *Counter-defendants.* | |

## HEWLETT-PACKARD COMPANY'S REPLY AND AFFIRMATIVE DEFENSES TO COMMONWEALTH SCIENTIFIC AND INDUSTRIAL RESEARCH ORGANISATION'S COUNTERCLAIMS

Plaintiff/Counter-defendant Hewlett-Packard Company ("HP") hereby files its Reply and

Affirmative Defenses to Commonwealth Scientific and Industrial Research Organization's ("CSIRO")

Counterclaims.

## PARTIES

1.      HP is without knowledge sufficient to admit or deny the averments of paragraph 150 of CSIRO's counterclaims, and HP therefore denies them.

2.      HP admits that defendant Microsoft Corporation is a Washington corporation and has its principal place of business at One Microsoft Way, Redmond, Washington 98052.  HP is without knowledge sufficient to admit or deny the remaining averments of paragraph 151 of CSIRO's counterclaims, and HP therefore denies them.

3.      HP admits that HP is a Delaware corporation and has its principal place of business at 3000 Hanover Street, Palo Alto, California 94304.  HP is without knowledge sufficient to admit or deny the remaining averments of paragraph 152 of CSIRO's counterclaims, and HP therefore denies them.

4.      HP admits that defendant NETGEAR is a Delaware corporation and has its principal place of business at 4500 Great America Parkway, Santa Clara, California 95054.  HP is without knowledge sufficient to admit or deny the remaining averments of paragraph 153 of CSIRO's counterclaims, and HP therefore denies them.

## JURISDICTION AND VENUE

5.      HP admits that the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), because this action arises under the patent laws of the United States.  HP admits venue is proper in this district under 28 U.S.C. §§ 1391(b)-(c) and 1400(b).  HP denies that it has committed acts of infringement in this or in any other district, and denies that it continues to commit acts of infringement in this or in any other district.  HP denies that CSIRO is entitled to any relief against HP.  HP is without knowledge sufficient to admit or deny the remaining averments of paragraph 154 of CSIRO's counterclaims, and HP therefore denies them.

2

## HP'S REPLY TO FIRST COUNTERCLAIM

6.      HP denies that U.S. Patent 5,487,069 ("the '069 patent") was duly and legally issued. HP is without knowledge sufficient to admit or deny the remaining averments of paragraph 155 of CSIRO's counterclaims, and HP therefore denies them.

7.      HP is without knowledge sufficient to admit or deny the averments of paragraph 156 of CSIRO's counterclaims, and HP therefore denies them.

8.      HP denies the averments of paragraph 157 of CSIRO's counterclaims.

9.      HP is without knowledge sufficient to admit or deny the averments of  paragraph 158 of CSIRO's counterclaims, and HP therefore denies them.

10.      HP denies that HP is liable for infringement of the '069 patent. HP is without knowledge sufficient to admit or deny the remaining averments of paragraph 159 of CSIRO's counterclaims, and HP therefore denies them.

11.      HP denies that HP has committed any act of infringement, and denies that HP has committed any act that has caused damage to CSIRO.  HP denies that CSIRO is entitled to recover damages from HP for any reason.  HP denies that HP has committed or is committing any acts that have or will damage CSIRO or cause any harm to CSIRO.  HP denies that CSIRO has no adequate remedy at law even if CSIRO were to prevail in this action.   HP is without knowledge sufficient to admit or deny the remaining averments of paragraph 160 of CSIRO's counterclaims, and HP therefore denies them.

12.      HP denies that it has infringed or is infringing the '069 patent, and therefore denies that it has willfully or deliberately infringed the '069 patent.  HP denies that CSIRO is entitled to increased damages under 35 U.S.C. § 284 or to attorneys fees and costs under 35 U.S.C. § 285.

3

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

13.     HP has not engaged in any acts that would constitute infringement of, contributory infringement of, or inducement to infringe, any valid claim of the '069 patent, either literally or under the doctrine of equivalents.

### SECOND AFFIRMATIVE DEFENSE

14.     The '069 patent and each of the claims of the '069 patent are invalid or unenforceable for failure to comply with the statutory provisions for patentability and validity set forth in Title 35 of the United States Code, including one or more of 35 U.S.C. §§ 101, 102, 103, 112, 132, and 256, for at least one of the following reasons, among others:

(a)     The alleged invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the alleged invention thereof by the patentees.

(b)     The alleged invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for a patent in the United States.

(c)     The alleged invention was described in a patent granted on an application for a patent by another filed in the United States before the invention thereof by the alleged patentees, or on an international application by another which complied with the requisite statutes.

(d)     The patentees did not themselves invent the alleged subject matter sought to be patented.

(e)     Before the alleged invention by the patentees, the alleged invention was made in this country by another who had not abandoned, suppressed, or concealed it.

4

(f)     The alleged invention was obvious at the time the invention was made to a person having ordinary skill in the art.

(g)     The alleged invention claimed in the '069 patent lacks utility.

(h)     The specification of the '069 patent does not contain a written description of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the invention.

(i)     The specification of the '069 patent does not describe a corresponding structure for one or more claim elements that are expressed as means for performing a specified function, which violates paragraph 6 of 35 U.S.C. 112.

(j)     The claims of the '069 patent do not particularly point out and distinctly claim the subject matter of the alleged invention.

(k)     The '069 patent does not comply with the requirements set forth in 35 U.S.C. 132, because new matter was added to the specification during prosecution.

### THIRD AFFIRMATIVE DEFENSE

15.     CSIRO's enforcement of the '069 patent is barred, in whole or in part, by the doctrine of equitable estoppel.  This estoppel is created by, but not limited to, CSIRO's failure to fulfill its assurance to the IEEE that it would license the '069 patent on reasonable and non-discriminatory terms.  This estoppel limits CSIRO's ability to obtain, among other remedies, attorneys' fees, enhanced damages, or an injunction.

### FOURTH AFFIRMATIVE DEFENSE

16.     CSIRO's enforcement of the '069 patent is barred, in whole or in part, by the doctrine of prosecution history estoppel.

5

## FIFTH AFFIRMATIVE DEFENSE

17.     CSIRO's enforcement of the '069 patent is barred, in whole or in part, by the equitable doctrines of laches and waiver.

## SIXTH AFFIRMATIVE DEFENSE

18.     Upon information and belief, CSIRO has failed to comply with the patent marking and notice requirements of 35 U.S.C. § 287 with respect to the '069 patent, which limits CSIRO's recovery of damages, if any, for alleged infringement of the '069 patent.

## SEVENTH AFFIRMATIVE DEFENSE

19.     CSIRO is not entitled to any relief or recovery by reason of its coming into this Court with unclean hands.

## EIGHTH AFFIRMATIVE DEFENSE

20.     CSIRO is not entitled to a preliminary or permanent injunction, because:  (1) CSIRO is not likely to prevail on the merits; (2) CSIRO has not suffered and will not suffer irreparable harm because of HP's conduct; (3) any harm to CSIRO would be outweighed by the harm to HP if an injunction were entered; (4) CSIRO has an adequate remedy at law even if CSIRO were to prevail in this action; (5) the public interest would not be served by an injunction; and (6) CSIRO is estopped from seeking an injunction.

## NINTH AFFIRMATIVE DEFENSE

21.     The '069 patent is unenforceable due to inequitable conduct committed during its

prosecution.  On information and belief, the named CSIRO inventors and/or others substantively

involved in the prosecution of the application leading to the '069 patent were aware of

information material to the patentability of the claims of the '069 patent, and they withheld that

information from the PTO with the intent to deceive the PTO.  The withholding of material prior

art with the intent to deceive the PTO is a violation of the duty of disclosure under 37 C.F.R. §

1.56 and constitutes inequitable conduct.

22.     The duty to disclose was a continuing one, continuing until and through the date of

issuance of the '069 Patent.

23.     On February 3, 1995, CSIRO filed with the PTO an Information Disclosure

Statement ("IDS") in alleged compliance with the duty of disclosure set forth in 37 C.F.R. 1.56.

24.     Upon information and belief, the following are specific items of prior art that

CSIRO and the named inventors identified below intentionally withheld from the PTO.

**The Percival Paper:**

25.     While the IDS disclosed certain prior art publications to the PTO, it did not

disclose a publication entitled "Wireless Systems at High Bit Rates – Technical Challenges" ("the

Percival paper").

26.     The Percival paper was authored by two of the CSIRO researchers named as

inventors in the '069 patent, Dr. Terence Percival and Dr. John O'Sullivan, as well as a third

CSIRO author, Alan Young.

27.     On information and belief, CSIRO published, distributed, and presented the

Percival Paper to members of the public on November 12, 1992 at the First International

Workshop on Mobile and Personal Communications Systems held at the University of South Australia in Adelaide, Australia.

28.     The Percival paper was a product of the CSIRO wireless LAN research that resulted in the '069 patent.  Every page of the paper bears the words "CSIRO Division of Radiophysics," and the "Acknowledgments" section of the paper states the following:

> The work presented here is a summary of the barriers and solutions to providing a high-speed WLAN system.  The work is a result of the discussions held over the last twelve months with a large number of colleagues in the CSIRO Institute of Information Science and Engineering and Macquarie University.

29.     Because the Percival paper was published more than one year prior to the actual filing date of the U.S. application leading to the '069 patent (i.e., November 23, 1993), it is prior art to the '069 patent under 35 U.S.C. §§ 102(b) and/or 103(a).

30.     The Percival paper discloses all of the elements of several of the issued and originally-filed claims of the '069 patent, and it discloses most, if not all, of the elements of the remaining issued and originally-filed claims.

31.     Furthermore, no reference considered by the PTO examiner during the prosecution of the '069 patent discloses as many of the elements of the issued and originally-filed claims as the Percival paper discloses.

32.     For at least these reasons, the Percival paper is highly material to the patentability of both the issued and the originally-filed claims of '069 patent.

33.     At least two of the named inventors, as described above, were aware of the Percival paper at, before, and during the filing of the IDS and the application that led to the '069 patent.

34.     At least two of the named inventors, as described above, intentionally did not disclose the Percival paper to the PTO and/or intentionally acted in such a way to ensure that the Percival paper was not disclosed to the PTO.

35.     At least two of the named inventors, as described above, intentionally did not disclose the Percival paper to the PTO with the intention of misleading the PTO as the disclosure would have had a significant and material impact on the patentability of the application that led to the '069 patent.

**The Barry Paper:**

36.     The IDS also did not disclose a publication entitled "High-Speed Nondirective Optical Communications for Wireless Networks" ("the Barry paper"), which was authored by John R. Barry, Joseph M. Kahn, Edward A. Lee, and David G. Messerschmitt.

37.     The Barry paper was known to at least two of the '069 patent inventors, Dr. Terence Percival and Dr. John O'Sullivan, because it was cited in the Percival paper.

38.     The Barry paper disclosed a wireless LAN using multicarrier modulation and was published in the November 1991 issue of IEEE Network Magazine, a printed publication widely disseminated to persons of ordinary skill in the relevant art.

39.     Because the Barry paper was published more than one year prior to the actual filing date of the application that led to the '069 patent, it is prior art to the '069 patent under 35 U.S.C. §§ 102(b) and/or 103(a).

40.     The Barry paper discloses all of the elements of several of the originally-filed claims of the '069 patent, and it discloses most, if not all, of the elements of the remaining issued and originally-filed claims, and was material to the patentability of the '069 patent.

9

41.     At least two of the named inventors, as described above, were aware of the Barry paper at, before, and during the filing of the IDS and the application that led to the '069 patent.

42.     At least two of the named inventors, as described above, intentionally did not disclose the Barry paper to the PTO and/or intentionally acted to ensure that the Barry paper was not disclosed to the PTO.

43.     At least two of the named inventors, as described above, intentionally did not disclose the Barry paper to the PTO with the intention of misleading the PTO as the disclosure would have had a significant and material impact on the patentability of the application that led to the '069 patent.

**The Rault Paper:**

44.     The IDS also did not disclose a publication entitled "The Coded Orthogonal Frequency Division Multiplexing (COFDM) Technique, and its Application to Digital Radio Broadcasting Towards Mobile Receivers" by J.C. Rault, D. Castelain, and B. Le Floch ("the Rault paper"), which was published, distributed, and presented to members of the public in 1989.

45.     The abstract of the publication states the following:[1]

> The broadcasting channel towards mobile receivers, especially in a dense urban area, is particularly hostile, which makes the transmission of high bit rate very challenging.

> The conjunction of an Orthogonal Frequency Division Multiplexing (OFDM) technique and a convolutional coding scheme (associated to a Viterbi decoding algorithm) is a promising solution (COFDM) studied at CCETT, that is suitable to cope with such a channel.

> In the first part of the paper, the theoretical principles of the system are detailed.  The second part concerns the realization of a complete COFDM system, designed within the framework of the DAB (Digital Audio Broadcasting) EUREKA 147 project, which is able to

---

[1]  CH2682 – 3/89/0000-0428, © 1989 IEEE, CSI0061454.

broadcast 5.6Mbit/s in a bandwidth of 7MHz.  For the time being, this rate corresponds to 16 high quality stereophonic programs.  Finally, network aspects are pointed out as far as the introduction of a new radio broadcasting service is concerned.

46.     Because the Rault paper was published more than one year prior to the actual filing date of the application that led to the '069 patent, it is prior art to the '069 patent under 35 U.S.C. §§ 102(b) and/or 103(a).

47.     The Rault paper discloses most or all of the elements of the issued and originally-filed claims of the '069 patent, and was material to the patentability of the '069 patent.

48.     At least one of the named inventors, Dr. Percival, was aware of the Rault paper before the issuance of the '069 patent.

49.     At least one of the named inventors, Dr. Percival, intentionally did not disclose the Rault paper to the PTO and/or intentionally acted in such a way to ensure that the Rault paper was not disclosed to the PTO.

50.     At least one of the named inventors, Dr. Percival, intentionally did not disclose the Rault paper to the PTO with the intention of misleading the PTO as the disclosure would have had a significant and material impact on the patentability of the application that led to the '069 patent.

**The Le Floch Paper:**

51.     The IDS also did not disclose a publication entitled "Digital Sound Broadcasting to Mobile Receivers" by Bernard Le Floch, Roselyne Halbert-Lassalle, and Damien Castelain ("the Le Floch paper"), which was published, distributed, and presented to members of the public in 1989.

11

52.     The Le Floch paper's "system" is outlined as follows:[2]

The system described in this article, combining spectrum and power efficiency, is mainly based on the conjunction of the Orthogonal Frequency Division Multiplexing technique (already proposed for HF data transmission in an ionospheric channel or for transmissions through telephone networks [3] [4]), and a coding strategy associated with diversity in the frequency domain.

53.     Because the Le Floch paper was published more than one year prior to the actual filing date of the application that led to the '069 patent, it is prior art to the '069 patent under 35 U.S.C. §§ 102(b) and/or 103(a).

54.     The Le Floch paper discloses most or all of the elements of the issued and originally-filed claims of the '069 patent, and was material to the patentability of the '069 patent.

55.     At least one of the named inventors, Dr. Percival, was aware of the Le Floch paper before the issuance of the '069 Patent.

56.     At least one of the named inventors, Dr. Percival, intentionally did not disclose the Le Floch paper to the PTO and/or intentionally acted to ensure that the Le Floch paper was not disclosed to the PTO.

57.     At least one of the named inventors, Dr. Percival, intentionally did not disclose the Le Floch paper to the PTO with the intention of misleading the PTO as the disclosure would have had a significant and material impact on the patentability of the application that led to the '069 patent.

**The Bingham Paper:**

58.     The IDS also did not disclose a publication entitled "Multicarrier Modulation for Data Transmission:  An Idea Whose Time Has Come" by John A. C. Bingham ("the Bingham paper"), which was published, distributed, and presented to members of the public in 1990.

---

[2] 0098 3063/89/0200 0493501, © 1989 IEEE, CSI0042438.

59.     Because the Bingham paper was published more than one year prior to the actual filing date of the application that led to the '069 patent, it is prior art to the '069 patent under 35 U.S.C. §§ 102(b) and/or 103(a).

60.     The Bingham paper discloses most or all of the elements of the issued and originally-filed claims of the '069 patent, and was material to the patentability of the '069 patent.

61.     At least one of the named inventors, Dr. Percival, was aware of the Bingham paper before the issuance of the '069 Patent.

62.     At least one of the named inventors, Dr. Percival, intentionally did not disclose the Bingham paper to the PTO and/or intentionally acted to ensure that the Bingham  paper  was not disclosed to the PTO.

63.     At least one of the named inventors, Dr. Percival, intentionally did not disclose the Bingham paper to the PTO with the intention of misleading the PTO as the disclosure would have had a significant and material impact on the patentability of the application that led to the '069 patent.

**HF Radios and Modems:**

64.     The IDS also did not disclose the existence of high-frequency modems and high-frequency radios ("HF radios and modems").

65.     HF radios and modems have been in existence since as early as the 1960's. Examples of HF radios and modems include an HF radio system called "Piccolo," the KATHRYN system, and marine HF radio.

66.     Because HF radios and modems were offered for sale, sold, made, and used more than one year prior to the actual filing date of the application that led to the '069 patent, they are prior art to the '069 patent under 35 U.S.C. §§ 102(b) and/or 103(a).

13

67.     HF radios and modems disclose most or all of the elements of the issued and originally-filed claims of the '069 patent, and were material to the application that led to the '069 patent.

68.     At least two of the named inventors, Graham Daniels and John O'Sullivan, were aware of HF radios and modems at, before, and during the filing of the IDS and the application that led to the '069 patent.

69.     At least two of the named inventors, as described above, intentionally did not disclose HF radios and modems to the PTO and/or intentionally acted to ensure that these items were not disclosed to the PTO.

70.     At least two of the named inventors, as described above, intentionally did not disclose HF radios and modems to the PTO with the intention of misleading the PTO as the disclosure would have had a significant and material impact on the patentability of the application that led to the '069 patent.

71.     In sum, each of the above described papers and HF radios and modems discloses most, or all of the elements of the originally-filed claims of the '069 patent.  Thus, the named CSIRO inventors, as described above, and/or others substantively involved in the prosecution of the '069 patent knew or reasonably should have known that the above described papers and HF radios and modems would have been important to and carefully considered by the examiner in deciding whether to allow the claims.

72.     Despite the high materiality of the above described papers and HF radios and modems and the written acknowledgment by the inventors and CSIRO of their duty to disclose material prior art, none of this prior art was disclosed to the PTO during the prosecution.

14

**Arguments For Patentability:**

73.     In response to a prior art rejection the PTO examiner entered against the originally-filed claims, CSIRO canceled the originally-filed claims and added new claims in an Amendment filed on June 30, 1995.

74.     In arguing for the patentability of the new claims, CSIRO asserted that the prior art cited by the PTO examiner did not disclose several specific elements of the new claims.

75.     However, all of the specific elements relied upon by CSIRO for its patentability arguments are disclosed in the aforementioned prior art, which was concealed from the PTO.

76.     Thus, the named CSIRO inventors, as identified above, and/or others substantively involved in the prosecution of the '069 patent knew or reasonably should have known that the above described papers and HF radios and modems would have been important and materially relevant to the examiner in deciding whether to allow the claims.

77.     The named CSIRO inventors, as identified above, and/or others substantively involved in the prosecution of the '069 patent acted with culpable intent to mislead or deceive the PTO by withholding known prior art and by making arguments for patentability which could not have been made had the art been disclosed.

78.     In fact, the only prior art that the named inventors disclosed to the PTO consisted of four references that the European Patent Office brought to the inventors' attention during the prosecution of their corresponding European patent application.  As stated in their lone Information Disclosure Statement dated February 3, 1995:  "Such prior art has come to the applicants' attention by being cited in a Search Report issued October 11, 1994 on the corresponding European application ...."  The named inventors did not disclose to the PTO any of the prior art of which they were independently aware.

15

79.     Upon information and belief, the failure by the named CSIRO inventors, as described above, and/or others substantively involved in the prosecution of the '069 patent to disclose the HF Radios and Modems and the Percival, Barry, Rault, Le Floch, and Bingham papers to the PTO examiner during the prosecution of the '069 patent was done with an intent to deceive the PTO and constitutes inequitable conduct and a violation of the duty of disclosure, thereby rendering the '069 patent unenforceable.

## TENTH AFFIRMATIVE DEFENSE

80.     CSIRO's request for relief is barred or otherwise limited by 35 U.S.C. § 288.

## ELEVENTH AFFIRMATIVE DEFENSE

81.     If CSIRO is entitled to any relief for alleged infringement of the '069 patent, some or all of that relief is limited under 28 U.S.C. § 1498(a).

## TWELFTH AFFIRMATIVE DEFENSE

82.     CSIRO'S requested relief is barred or otherwise limited based on exhaustion, the first-sale doctrine, and/or restrictions on double recovery.

## THIRTEENTH AFFIRMATIVE DEFENSE

83.     Any award of enhanced or increased damages for willful infringement as pleaded in CSIRO's counterclaims would violate the due process clause of the Fourteenth Amendment to the United States Constitution.

## FOURTEENTH AFFIRMATIVE DEFENSE

84.     CSIRO is not entitled to enhanced or increased damages for willful infringement, because HP has not engaged in any conduct that meets the applicable standard for willful infringement.

## FIFTEENTH AFFIRMATIVE DEFENSE

85.     HP reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States and any other defenses, at law or in equity, which may now exist or in the future may be available based on discovery and further factual investigation in this case.

## DEMAND FOR JURY TRIAL

86.     HP hereby demands trial by jury of all claims and issues so triable.

## PRAYERS FOR RELIEF

WHEREFORE, HP prays for judgment on CSIRO's counterclaim as follows:

(a)     that CSIRO's Counterclaim be dismissed, with prejudice, and that CSIRO take nothing by its counterclaim;

(b)     that judgment be entered declaring that United States Patent 5,487,069 is invalid, void, unenforceable, without any force or effect, and has not been infringed by HP;

(c)     that an order be entered enjoining CSIRO, its officers, directors, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from alleging, asserting, or stating that HP has infringed or is infringing United States Patent 5,487,069, or has used or is using any alleged invention claimed therein, or that the patent is valid or enforceable;

(d)     that HP be awarded its costs and attorneys' fees in this matter;

(e)     that the Court enter an order placing reasonable but effective restrictions on future transactions of CSIRO to assure its ability to pay promptly the judgment entered against it in this action; and

(f)     that HP be awarded such other relief as the Court deems just and proper.

Dated: May 13, 2008                     Respectfully submitted,

                                        By:   /s/ David J. Levy
                                              David J. Levy
                                              State Bar No. 12264850
                                              *Lead Attorney*
                                              MORGAN, LEWIS & BOCKIUS L.L.P.
                                              1000 Louisiana Street, Suite 4200
                                              Houston, Texas 77002
                                              Telephone No. (713) 890-5170
                                              Fax:  (713) 890-5001
                                              Email: dlevy@morganlewis.com

                                              *Of Counsel*:

                                              Rick L. Rambo
                                              State Bar No. 00791479
                                              C. Erik Hawes
                                              State Bar No. 24042543
                                              MORGAN, LEWIS & BOCKIUS L.L.P.
                                              1000 Louisiana Street, Suite 4200
                                              Houston, Texas 77002
                                              Telephone No. (713) 890-5000
                                              Telecopier No. (713) 890-5001
                                              E-mail:  rrambo@morganlewis.com
                                              E-mail:  ehawes@morganlewis.com

                                              Jennifer Parker Ainsworth
                                              State Bar No. 00784720
                                              WILSON, ROBERTSON & CORNELIUS, P.C.
                                              909 ESE Loop 323, Suite 400
                                              P.O. Box 7339 [75711]
                                              Tyler, Texas 75701
                                              Telephone No. (903) 509-5000
                                              Telecopier No. (903) 509-5092
                                              E-mail: jainsworth@wilsonlawfirm.com

                                        Counsel for HEWLETT-PACKARD
                                        COMPANY

                                              ATTORNEYS FOR PLAINTIFF/
                                              COUNTER-DEFENDANT
                                              HEWLETT-PACKARD COMPANY

18

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served upon counsel of record for Defendant/Counter-Plaintiff Commonwealth Scientific and Industrial Research Organisation by email (pursuant to agreement among the parties) on this the 13th day of May, 2008.

*/s/ David J. Levy*

David J. Levy

1-WA/2974076.1