**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **INTEL CORPORATION, et al.,** | § § | |
| Plaintiff, | § | **Civil No. 6:06-cv-551** |
| v. | § § | |
| **COMMONWEALTH SCIENTIFIC AND INDUSTRIAL RESEARCH ORGANISATION,** | § § § § § | |
| Defendant. | § § | |
| _____ | § | |
| **MICROSOFT CORP., et al.,** | § § | |
| Plaintiff, | § | **Civil No. 6:06-cv-549** |
| v. | § § | |
| **COMMONWEALTH SCIENTIFIC AND INDUSTRIAL RESEARCH ORGANISATION,** | § § § § § | |
| Defendant. | § § | |
| _____ | § | |
| **COMMONWEALTH SCIENTIFIC AND INDUSTRIAL RESEARCH ORGANISATION,** | § § § § | |
| Plaintiff, | § | **Civil No. 6:06-cv-550** |
| v. | § § | |
| **TOSHIBA AMERICA INFORMATION SYSTEMS, INC., et al.,** | § § § | |
| Defendant. | § § | |
| _____ | § | |
| **MARVELL SEMICONDUCTOR, et al.,** | § § | |
| Plaintiff, | § | **Civil No. 6:07-cv-204** |
| v. | § § | |
| **COMMONWEALTH SCIENTIFIC AND INDUSTRIAL RESEARCH ORGANISATION,** | § § § § | |

1

**Defendant.** §
§

## MEMORANDUM OPINION AND ORDER

Before the Court is Commonwealth Scientific and Industrial Research Organization's ("CSIRO") Motion to Rescind its Stipulation Agreeing to Defendants' Amendment of Invalidity Contentions and to Strike All References to the Morris Thesis (6:06-cv-551 Docket No. 283; 6:06-cv-549 Docket No. 326; 6:06-cv-550 Docket No. 386; 6:07-cv-204 Docket No. 122). After considering the parties' written submissions, the Court **DENIES** the motion in its entirety.

## BACKGROUND

These four cases involve CSIRO's allegations that various Defendants[1] are infringing U.S. Patent No. 5,487,069 (the "'069 patent"). On February 27, 2008 CSIRO served Common Interrogatory No. 19 to all Defendants asking each to "[i]dentify each communication between You and a non-party concerning prior art, including but not limited to the participants in that communication, the date of the communication, any prior art identified in that communication, and any opinions as to whether that prior art would tend to invalidate the '069 patent." Though some of these cases are coordinated for pretrial discovery, each party is responsible for responding individually to interrogatories. Accordingly, on April 18, 2008 Intel responded that "[o]n October 2, 2007, counsel for Intel had communications with Bradley Morris regarding certain publications."

On May 9, 2008 Defendants sought CSIRO's consent to late amend Defendants' invalidity contentions ("DICs"). Specifically, Defendants requested to amend their prior art references to

---

[1] Though some of these cases are declaratory judgment actions where CSIRO is the defendant, CSIRO has asserted counterclaims against all parties in those actions. Therefore, for ease of reference, all parties other than CSIRO will be referred to as "Defendants."

2

include a graduate thesis written by Bradley Morris at the University of Calgary (the "Morris Thesis"). In conjunction with that request CSIRO received an e-mail on May 15, 2008 from Defendants stating that they were unable to confirm that the Morris Thesis was made available to the public prior to serving its initial invalidity contentions and that they "first learned that the Morris thesis was an anticipatory reference in early May 2008." Then, on June 23, 2008, Dell supplemented its response to Interrogatory No. 19 indicating that it had communicated with Leila Southwood on April 23, 2008 and May 5, 2008 confirming the availability of the Morris Reference to the public at "TRLabs Calgary Library" prior to the critical date, November 23, 1993. Subsequently, CSIRO agreed to the amendment, and Defendants filed their unopposed motion to amend their DICs on July 2, 2008, which ultimately led to an order granting leave for Defendants to amend their DICs on July 7, 2008 (the "July 7 Order").[2] After deposing Morris and Southwood, CSIRO now seeks to withdraw its stipulation, asks the Court to deny Defendants leave to amend their DICs to include the Morris Thesis, and alternatively moves to strike the Morris Thesis from Defendants' expert reports because it was not "published" as contemplated by 35 U.S.C. § 102(b).[3]

## APPLICABLE LAW

Both sides characterize this motion as a request to withdraw a stipulation. Both sides also assume that the motion is governed by the standard for withdrawing stipulations of fact. *See Sherman v. United States*, 462 F.2d 577, 579 (5th Cir. 1972) ("[Pretrial orders] and stipulations,

---

[2] The order provides, in part: "[Defendants] filed their Motion for Leave to Amend Invalidity Contentions. Plaintiff Commonwealth Scientific and Industrial Research Organization ("CSIRO") does not oppose the relief requested therein. Accordingly, such Motion is GRANTED, and it is ORDERED that Defendants are authorized to amend their Invalidity Contentions . . . ." 6:06-cv-551-LED, Docket No. 241 (July 7, 2008).

[3] Though CSIRO calls this a "Motion to Strike," the relief it requests is a judgment on the merits. Therefore, the motion is more properly referred to as one for summary judgment.

freely and fairly entered into, are not to be set aside except to avoid manifest injustice."); *United States v. State of Tex.*, 523 F. Supp. 703, 713 (E.D. Tex. 1981) (Justice, J.) (holding that stipulations may not be withdrawn absent a clear and convincing demonstration that manifest injustice would otherwise result). However, no stipulation has been made on the record nor has one been recited in an order. *Cf. Uranium Contracts Litig.*, 570 F.2d 899, 901-02 (10th Cir. 1978) (holding that where an order recited a stipulation into the record a court was empowered to "relieve a party from an improvident agreement or one that might work injustice"). Rather, CSIRO now seeks to withdraw its non-opposition to Defendants' July 2, 2008 motion.

The parties have not cited to, nor has the Court found, any authority addressing relief from a non-opposition agreement after an order granting the underlying motion has been entered. Motion practice involving invalidity contentions stem from this Court's Patent Rules. *See* P.R. 3-3, 3-6. In turn, those rules are adopted under to the Court's inherent power and compliment Federal Rule of Civil Procedure 16. *Computer Acceleration Corp. v. Microsoft Corp.*, 481 F. Supp. 2d 620, 624 (E.D. Tex. 2007) (Clark, J.). Orders addressing late amendment of infringement contentions are akin to modifying and extending scheduling orders provided for in Rule 16(b)(4). *Id.* However, as both sides implicitly concede, the standard for reversing an order stemming from an unopposed motion to late-amend DICs must be more stringent than the standard for granting such a motion if it was opposed. To hold otherwise fails to effectively account for the strong judicial interest in parties resolving their own discovery disputes. *See* FED. R. CIV. P. 26(c)(1), (f), 37(a)(1) (requiring a conference between parties before requesting protective orders, compelling discovery, and prior to all scheduling orders); *see also* E.D. Tex. Local Rule CV-7(h).

Nevertheless, CSIRO asserts that this motion is based on Defendants' fraud during the

4

discovery and negotiation process leading to CSIRO's allegedly misinformed assent. Actual fraud in the discovery process would certainly be grounds for reversing an opposed motion to amend DICs. *See Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 784 (9th Cir. 2003) (holding that fraudulent answers to interrogatories are grounds for reopening final judgments under Rule 60(b)); *accord Averbach v. Rival Mfg. Co.*, 809 F.2d 1017, 1022-23 (3d Cir. 1987). Since CSIRO has alleged no other grounds for reversing the July 7 Order, the Order will be reversed and the Morris Thesis stricken only if CSIRO can show actual fraud in the discovery process inducing it not to oppose the July 2 motion.

## ANALYSIS

CSIRO has alleged two instances of fraud before and during the negotiations over the Morris Thesis. First, CSIRO alleges that Defendants misrepresented the date that Morris was first contacted concerning his thesis. CSIRO claims that this misrepresentation led to its false belief that Defendants had been diligent in determining whether the Morris Thesis was prior art. Defendants counter that no misrepresentation was actually made and that CSIRO's misunderstanding stemmed from its negligence in pursuing its own discovery requests.

During his deposition, Morris testified that he had been contacted by an attorney concerning the '069 patent in 2005. 6:06-cv-550-LED, Docket No. 386, CSIRO's Motion to Withdraw, Exh. H, Morris Depo. Tr. at 35:3-15. Further discovery revealed that Morris had been contacted around February 11, 2005 by attorneys for Nortel and Hewlett-Packard. 6:06-cv-550-LED, Docket No. 427-2, CSIRO's Motion to Supplement, Ex. A. Nortell was briefly involved in the litigation surrounding the '069 patent, but is not currently a party in any case before the Court. Hewlett-Packard is currently a party to one of the '069 cases.

As recounted above, Intel's response to CSIRO's Interrogatory 19 placed initial communications with Morris on October 2, 2007. CSIRO had not received any other responses to Interrogatory 19 concerning Morris from any other Defendants. From this information, CSIRO assumed that no other Defendant had contact with Morris before that date. That assumption was incorrect. CSIRO admits that each Defendant is responsible for its own discovery responses and that the allegations of fraud are based more on Hewlett-Packard's silence than on Intel's affirmative representation. Furthermore, despite CSIRO's concern for Defendants' diligence in researching and identifying prior art and the extensive negotiations that led to the unopposed July 2 motion, CSIRO has not produced any communications or discovery instrument between it and Defendants inquiring as to whether October 2, 2007 was the first time Morris had been contacted by *any* of the Defendants. CSIRO suggests that all Defendants had a duty to disclose this first communication because all Defendants were aware of it. To the contrary, whether any Defendant had communications with third parties regarding prior art was conspicuously outside the scope of CSIRO's Interrogatory 19. Questions not asked cannot be answered. Furthermore, the record contains no evidence that all Defendants were aware of the February 2005 communication with Morris.

While it is very troubling that Hewlett-Packard failed to disclose its communication with Morris, after reviewing the record it is clear that the failure was due to inadvertence rather than Defendants' desire to fraudulently induce CSIRO into agreeing to various prior art amendments. The various parties involved with the '069 patent litigation had struggled from the beginning over whether the Morris Thesis was a "publication" qualifying it as prior art. In fact, Morris testified during his deposition that the attorneys who contacted him in 2005 decided not to reference the

thesis. *See* 6:06-cv-550-LED, CSIRO's Reply, Ex. B, Morris Depo Tr. at 37:1-4; 40:7-8. Then, as Dell disclosed in its response to Interrogatory 19, Defendants discovered additional evidence relating to the Morris Thesis after speaking with Leila Southwood on May 5, 2008. Defendants' May 15, 2008 e-mail suggests this event to CSIRO. Defendants vehemently claim that the Morris Thesis did not become relevant as potential prior art until the Southwood interview took place. To a degree, Defendants are correct.

Federal Rule of Civil Procedure 26 imposes an initial duty to disclose information concerning individuals likely to have discoverable information. FED. R. CIV. P. 26(a)(1)(A)(I). There is an additional duty to supplement that information whenever a party learns that previous disclosures have become incomplete. *Id*. at 26(e)(1). In the realm of patent litigation and broad searches for prior art, the boundaries of this duty can become jumbled. Discoverability ultimately focuses on the relevance of a piece of information. *Id.* at 26(b)(1). As in all cases, the initial judges of relevance are the parties themselves.

> Civil litigation in this country is conducted on an honor system. Only in rare circumstances can a party force its way into an opposing party's corporate offices and root through its documents unfettered. Rather, each party is responsible for conducting its own search of its own documents and turning over all of the relevant, non-privileged documents. Each side must trust that the other has not withheld or destroyed the proverbial smoking gun.

*ClearValue v. Pearl River Polymers, Inc.*, 242 F.R.D. 362, 384 (E.D. Tex. 2007) (Davis, J.). While the line between relevant and irrelevant prior art can be unclear, the Court will not tolerate gamesmanship or the use of this inherent ambiguity as an excuse to knowingly withhold relevant evidence. In this case, the record indicates that Defendants did not appreciate the true relevance of the Morris Thesis as prior art until May 2008, thus excusing their collective failure to disclose Morris

or his thesis at the outset of the litigation. CSIRO's allegations of fraud on this ground are overruled.

CSIRO next alleges that Defendants misrepresented that the Morris Thesis was a publication and various facts about Leila Southwood's testimony. CSIRO first learned of the existence of Southwood in the May 15, 2008 e-mail referenced above. The e-mail disclosed that Defendants had interviewed a "librarian" but did not disclose a name or contact information. Then, Dell disclosed its communications with Southwood along with her contact information in their June 23, 2008 supplement to Interrogatory 19. CSIRO claims that Defendants misrepresented that Southwood was a librarian and that any combination of the testimony of either Morris or Southwood indicated that the Morris thesis was "published" prior to the critical date.

CSIRO's briefing on this argument makes numerous references to Southwood's and Morris's deposition testimony. While CSIRO references both the direct and cross examinations of Morris and Southwood to show that Defendants misrepresented relevant facts, after reviewing the deposition testimony there is no evidence of misconduct. Rather, the briefing on this contention, from the outset, is directed to arguing whether the testimony amounts to legally sufficient evidence of "publication." If CSIRO is prepared to argue the merits of the "publication" issue, as it ultimately does in the latter part of its motion, then the matter is properly raised in a motion for summary judgment. Accusations of discovery misconduct are serious, and they should not be imputed lightly or without a solid evidentiary basis. *See* FED. R. CIV. P. 11(b)(3). Procedural motions such as CSIRO's are designed to exclude evidence, regardless of its merit, for some unfairness in the discovery process. Skillfully arguing the merits in a procedural motion does little to aid CSIRO's claims of "prejudice" and "surprise." Rather, it highlights the parties' ability to fully apprise the Court of the issues and address them head-on. As "[t]he Federal Rules are diametrically opposed

to a tyranny of technicality and endeavor to decide cases on the merits," the Court cautions both sides that abuse of its procedural processes will not be tolerated. *Amberg v. Fed. Deposit Ins. Corp.*, 934 F.2d 681, 686 (5th Cir. 1991). Defendants did not intentionally misrepresent any material information concerning Southwood, and CSIRO could have easily remedied any misunderstanding there might have been before agreeing not to oppose the July 2 motion by simply calling Southwood using the phone number provided by Dell in its June 23, 2008 disclosure. CSIRO's Motion to Rescind is denied.

Finally, CSIRO moves for summary judgment on the issue of whether the Morris Thesis was "published" as contemplated by 35 U.S.C. § 102. Summary judgment is appropriate when the movant presents evidence that "there is no genuine issue as to any material fact" as to any part of a claim or defense. FED. R. CIV. P. 56(c). An issue of material fact is genuine if the evidence could lead a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). After carefully reviewing the parties' submissions, there are numerous material fact issues concerning the Morris Thesis and the circumstances surrounding its purported "publication." The parties are free, as always, to make their excellent factual arguments at trial. Summary judgment is denied.

## CONCLUSION

For the aforementioned reasons, CSIRO's motion is **DENIED**.

**So ORDERED and SIGNED this 27th day of January, 2009.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**

9