IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| MICROSOFT CORPORATION, APPLE COMPUTER, INC., HEWLETT-PACKARD COMPANY, and NETGEAR, INC. | § § § § | |
| Plaintiffs | § § | CASE NO. 6:06 CV 549 PATENT CASE |
| vs. | § § | |
| COMMONWEALTH SCIENTIFIC AND INDUSTRIAL RESEARCH ORGANISATION | § § § | |
| Defendant | § § | |

| | | |
|---|---|---|
| COMMONWEALTH SCIENTIFIC AND INDUSTRIAL RESEARCH ORGANISATION | § § § | |
| Plaintiff | § § | CASE NO. 6:06 CV 550 |
| vs. | § § | PATENT CASE |
| TOSHIBA AMERICA INFORMATION SYSTEMS, INC., NINTENDO OF AMERICA, INC., FUJITSU COMPUTER SYSTEMS CORPORATION, ASUS COMPUTER INTERNATIONAL, D-LINK SYSTEMS, INC., BELKIN CORPORATION, ACCTON TECHNOLOGY CORPORATION USA, SMC NETWORKS, INC., and 3COM CORPORATION | § § § § § § § § § § § | |
| Defendants | § | |

1

| | |
|---|---|
| **INTEL CORPORATION and DELL INC.** § § | |
|     **Plaintiffs** § § | |
| vs. § § | **CASE NO. 6:06 CV 551** |
|  § § | **PATENT CASE** |
| **COMMONWEALTH SCIENTIFIC AND** § § | |
| **INDUSTRIAL RESEARCH ORGANISATION** § § | |
|  § § | |
|     **Defendants** § | |

| | |
|---|---|
| **COMMONWEALTH SCIENTIFIC AND** § § | |
| **INDUSTRIAL RESEARCH ORGANISATION** § § | |
|  § § | |
|     **Plaintiff** § § | |
| vs. § § | **CASE NO. 6:06 CV 324** |
|  § § | **PATENT CASE** |
| **BUFFALO TECHNOLOGY (USA), INC.** § § | |
|  § § | |
|     **Defendant** | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Non-Party Cisco Systems, Inc.'s Motion for Confidentiality Order (Docket No. 329 in 6:06cv549, No. 395 in 6:06cv550, No. 286 in 6:06cv551, and No. 312 in 6:06cv324). Having considered the parties' written submissions, the Court **GRANTS** the motion in part.

**BACKGROUND**

In 1998, Commonwealth Scientific and Industrial Research Organisation ("CSIRO") entered into a "Technology License Agreement" ("TLA") with Radiata Communications Pty, Ltd. In 2001, Cisco acquired Radiata, stepping into its shoes in the in the TLA.

CSIRO is involved in five civil actions ("CSIRO Actions") in which it accuses various entities of infringing its U.S. Patent No. 5,487,069. CSIRO has not sued Cisco for infringement, but CSIRO and Cisco are in negotiations over Cisco's compliance with the TLA.

2

CSIRO and Cisco's TLA is related to the '069 patent, causing Cisco to be the subject of much discovery in the CSIRO Actions. Past and present discovery topics include: Cisco and Radiata's negotiations in Cisco's acquisition of Radiata and Cisco's due diligence in that acquisition, communications between Cisco and its third-party manufacturers, internal documents about the successes and failures of Cisco's products, Cisco's business plans about other acquisitions and products in the wireless LAN market, Cisco's source code, Cisco's licenses and agreements with third parties on research and development, manufacturing, and related financial transactions, and technical documents regarding the development of certain Cisco products.

Given the amount and the nature of discovery Cisco has been asked to produce in the CSIRO Actions, Cisco seeks a protective order that prevents that information from being used against it in its unrelated negotiations with CSIRO. Specifically, Cisco is concerned because CSIRO's in-house employees who review discovery in the CSIRO Actions, Denis Redfern and Terry Healy, are also involved in the negotiations with Cisco. Healy is CSIRO's in-house counsel, and Redfern is CSIRO's patent licensing consultant. According to Cisco, much of the same information now sought through discovery from Cisco in the CSIRO actions was unsuccessfully sought by CSIRO during the negotiations.

Although a protective order is in place in the CSIRO Actions, Cisco claims it is insufficient to protect Cisco's interests and moves to have its own protective order entered in the cases. Cisco moves for entry of its own proposed protective order that includes the ability to designate certain documents "outside attorneys eyes only" and other modifications that correlate to these changes. The "outside attorneys eyes only" status would allow CSIRO's in-house employees to review documents designated as such only if they do not participate in wireless LAN patent licensing negotiations or

3

patent prosecution in the wireless LAN field. Cisco also seeks a clawback of Cisco's confidential documents that have been shown to Healy. Defendants in the CSIRO Actions, who are considered all parties except CSIRO, do not oppose Cisco's protective order. CSIRO opposes the proposed protective order arguing that the current protective order is sufficient to protect Cisco.

## APPLICABLE LAW

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
> (A) forbidding the disclosure or discovery;
> (B) specifying terms, including time and place, for the disclosure or discovery;
> (C) prescribing a discovery method other than the one selected by the party seeking discovery;
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
> (E) designating the persons who may be present while the discovery is conducted;
> (F) requiring that a deposition be sealed and opened only on court order;
> (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and
> (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

FED. R. CIV. P. 26(c). "As a general proposition, a district court can exercise its sound discretion in determining how far to restrict discovery; and, in particular, the decision whether to grant or deny a request for a protective order is entrusted to the district court's sound discretion." *Nguyen v. Excel Corp.*, 197 F.3d 200, 209 n.27 (5th Cir. 1999). Access to discovery can be denied to competitive decision makers who may inadvertently use the material for inappropriate purposes. *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (1984); *ST Sales Tech Holdings, LLC v. Daimler Chrysler Co.*, 2008 WL 5634214, 6:07cv346-LED-JDL (E.D. Tex. March 14, 2008) (Love, Mag. J.). Courts weigh the risk of inadvertent or accidental disclosure of the confidential information against the receiving party's need for the material to prosecute or defend its claims. *ST Sales Tech*, 2008 WL 5634214

at *3; *see also U.S. Steel*, 730 F.2d at 1468. Courts consider the factual circumstances relating the receiving person's activities, association, and relationship with the receiving party, whether the person receiving the confidential information is involved in competitive decision making or scientific research, the risk of inadvertent disclosure, the hardship imposed by the restriction, the timing, and the scope of the relief sought. *St Sales Tech*, 2008 WL 5634214 at *3–*4 (citing *Infosint S.A. v. H. Lundbeck A.S.*, 2007 WL 1467784 at *2 (S.D.N.Y. 2007)).

## ANALYSIS

CSIRO contends that it is not Cisco's competitor, and thus Redfern and Healy cannot be competitive-decision makers, because CSIRO is a research organization that does not make or sell products competitive to Cisco's. In this District, courts have not limited the category of competitive decision makers to only those people who work for entities that make or sell competing products. *See St Sales Tech*, 2008 WL 5634214 at *3–*7. In *ST Sales Tech*, the court held that an allegedly outside counsel to numerous related patent licensing companies—none of which made or sold any products—was a competitive decision maker to defendants, who were all in the automotive industry. *Id*. Here, CSIRO and Cisco are not traditional competitors in the market place, but they are adversarial. Cisco produces products that CSIRO claims practice its patent. Currently, the parties are in negotiations about the scope of Cisco's license under the TLA and Cisco's compliance with the TLA. Healy and Redfern, through their roles in the TLA negotiations, are especially situated to take positions that are directly harmful and antagonistic to Cisco.

Both Healy and Redfern are CSIRO's employees.[1] Healy is in-house counsel to CSIRO, and

---

[1] Although Redfern is not an attorney, the Court analyzes this motion under the standard applied to attorneys. "[I]n-house counsel are officers of the court, are bound by the same Code of Professional Responsibility, and are subject to the same sanctions [as retained counsel]." *U.S. Steel*, 730 F.2d at 1468. If disclosure to Healy is inappropriate, then certainly disclosure to Redfern, who, as a non-attorney, is not an officer of the court, held to the same Code of

5

his responsibilities include prosecution of foreign counterparts to the '069 patent and licensing the '069 patent outside of the CSIRO Actions, including with respect to Cisco. Redfern is not an attorney and is employed a CSIRO subsidiary responsible for licensing the '069 patent. According to Cisco, Redfern has been extensively involved in the CSIRO-Cisco negotiations. Under the existing protective order, CSIRO has designated both Healy and Redfern as persons able to view Attorneys Eyes Only information. Under the current protective order, Healy and Redfern are barred from reviewing non-public technical information.

It is undisputed that under the current protective order Healy and Redfern can review Cisco's discovery and that they participate in the CISRO-Cisco negotiations. Here, the issue is not whether Healy or Redfern will inadvertently disclose confidential information, but that they will use information they learned through discovery in the CSIRO Actions in the CSIRO-Cisco negotiations. The current protective order forbids the use of confidential information for purposes outside the CSIRO Actions. Protective Order, § 3.1. However, once Cisco's confidential information is known by Healy and Redfern through this discovery, it will be impossible for them to "unknow" it during the negotiations. This is no way implies or assumes that Healy or Redfern will intentionally violate the current protective order by using Cisco's confidential information in the CISRO-Cisco negotiations. Rather, the risk of Healy or Redfern inadvertently or unintentionally doing so is extremely high.

CSIRO contends that limiting Healy's and Redfern's ability to review Cisco's confidential information will prevent CSIRO from fulfilling its statutory duty to report to the Australian government on the status of the CSIRO Actions. CSIRO also contends that Cisco is trying to

---

Professional Responsibility, nor subject to the same sanctions as Healy, is inappropriate.

obstruct CSIRO's ability to conduct discovery in the CSIRO Actions. According to CSIRO, the TLA seems to be the heart of Defendants' damages theory, and Healy and Redfern need to be able to review Cisco's discovery to manage the decision making in the case and participate in settlement negotiations with Defendants.

Cisco's risk of inadvertent disclosure or misuse of its confidential documents outweigh's CSIRO's need for the material to prosecute it case, warranting much of the relief that Cisco seeks. *See ST Sales Tech*, 2008 WL 5634214 at *3. Healy and Redfern are in unique positions to be able to use Cisco's confidential information gained from Cisco through discovery in the CSIRO Actions against Cisco in the CSIRO-Cisco negotiations. As Cisco has previously refused to disclose some of this material to CSIRO, it is clear that Cisco would not disclose the information were it not for the subpoenas issued pursuant to the CSIRO Actions. The relief that Cisco seeks is generally reasonable. Cisco does not seek to prevent CSIRO's in-house designees from reviewing Cisco's confidential information, but merely from being able to review that information and potentially use that information against Cisco in the CSIRO-Cisco negotiations. Accordingly, the Court grants that aspect of relief. It will be up to CSIRO to determine whether Healy and Redfern will continue to participate in the review of confidential discovery information in the CSIRO Actions or in the CSIRO-Cisco TLA negotiations. As the current protective order already prevents CSIRO's in-house designees from reviewing non-public technical documents, a further prosecution bar is unnecessary. To that extent, the Court denies Cisco's request for relief. To the extent that CSIRO chooses that Healy will continue to participate in the CSIRO-Cisco negotiations, the Court grants Cisco's request for a clawback of its confidential information already shown to Healy. If CSIRO chooses that Healy will participate in the litigation rather than the negotiations, such relief is unnecessary.

CSIRO also contends that under Cisco's proposed protective order, Cisco could make CSIRO's discovery efforts more difficult by designating documents it discloses to CSIRO as "outside attorneys eyes only" while designating the same documents to Defendants as merely "attorneys eyes only." The Court orders that Cisco's designations must be equally applicable to all parties receiving the discovery.

## CONCLUSION

For the reasons stated, the Court **GRANTS** the motion to the extent that Cisco seeks a protective order allowing for the designation of "outside attorneys eyes only" documents such that CSIRO's in-house designees may see "outside attorneys eyes only documents" so long as they do not participate in negotiations with Cisco. The Court **GRANTS** Cisco's request for a clawback of the documents already shown to Healy if he continues to participate in the negotiations with Cisco. The Court **DENIES** the motion to the extent it seeks a prosecution bar beyond what has already been established in the current protective order. The Court **ORDERS** Cisco and CSIRO to meet and confer on an agreed protective order consistent with the Court's rulings. If Cisco and CSIRO cannot agree on a protective order, they should jointly submit one version of the order with areas of disagreement and each sides' proposed language indicated.

**So ORDERED and SIGNED this 23rd day of February, 2009.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**